**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No.  10-34074** |
| **PEARVILLE, L.P.** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

## JOINT DISCLOSURE STATEMENT
## OF THE DEBTOR AND LVH PEARVILLE LLC

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE CHAPTER 11 PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.  THERE WILL BE A HEARING ON THIS DISCLOSURE STATEMENT TO DETERMINE IF IT PROVIDES ADEQUATE INFORMATION.  IF THE DISCLOSURE STATEMENT IS APPROVED BY THE BANKRUPTCY COURT, THERE WILL BE A SUBSEQUENT HEARING TO CONSIDER CONFIRMATION OF THE PLAN.  ALL CREDITORS AND EQUITY INTEREST HOLDERS WILL BE NOTIFIED OF THE DATE OF SUCH CONFIRMATION HEARING.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

205779

## EXHIBITS TO DISCLOSURE STATEMENT

EXHIBIT D-1          CHAPTER 11 PLAN OF REORGANIZATION

EXHIBIT D-2          PARTNERSHIP STRUCTURE

EXHIBIT D-3          INSIDERS

EXHIBIT D-4          EXECUTORY CONTRACTS

EXHIBIT D-5          LIQUIDATION ANALYSIS

## I. DEFINITIONS AND RULES OF CONSTRUCTION

This Disclosure Statement incorporates the Definitions and Rules of Construction stated in the Chapter 11 Plan filed contemporaneously herewith and as amended.

## II. INTRODUCTION

Pearville, L.P. referred to as the "Debtor", or on and after the Effective Date of the Plan, the "Reorganized Debtor", has filed a Chapter 11 Plan of Reorganization (the "Plan"). The Plan is jointly proposed by the Debtor and Van Hessen (the "Plan Proponents"). The Plan is attached to this Disclosure Statement as **Exhibit D-1**. The Plan Proponents submit this Disclosure Statement (this "Disclosure Statement"), pursuant to Section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), to holders of Claims against and Interests in the Debtor, in connection with (i) the solicitation of acceptances or rejections of the Plan (together with any modification, amendment or supplement, of the Plan), and (ii) the hearings to consider approval of the Plan to be scheduled before the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") on the date(s) set forth in the accompanying notice.

In the event of a conflict or difference between the definitions used, and provisions contained, in this Disclosure Statement and the Plan, the definitions and provisions contained in the Plan shall control.

NEITHER THE DEBTOR, LVH PEARVILLE LLC NOR THEIR COUNSEL, ARE ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. EXCEPT AS SPECIFICALLY NOTED, THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, ALTHOUGH THERE IS NO ACTUAL KNOWLEDGE OF ANY INACCURACY. THE FACTUAL INFORMATION REGARDING THE DEBTOR, INCLUDING THE ASSETS

**AND LIABILITIES OF THE DEBTOR HAS BEEN DERIVED FROM NUMEROUS SOURCES, INCLUDING, BUT NOT LIMITED TO DEBTOR'S BOOKS AND RECORDS, PROOFS OF CLAIM FILED IN THIS CASE, THE DEBTOR'S SCHEDULES, , PLEADINGS AND REPORTS ON FILE WITH THE COURT, LOAN AGREEMENTS AND BUSINESS RECORDS AND DOCUMENTS SPECIFICALLY IDENTIFIED HEREIN.**

## III. PURPOSE AND SUMMARY OF THE PLAN

**THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY. HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW AND ANALYZE THE PLAN IN ITS ENTIRETY**.

The primary purpose of the Plan is to satisfy the claims against the Debtor through payment pursuant to the terms of the Plan.

## IV. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**A.    TREATMENT OF CLAIMS AND INTERESTS**

The Plan contemplates payment of all Allowed Claims as described below against the Debtor utilizing the Exit Financing to be provided by Van Hessen pursuant to the terms described set forth herein.

**B.    CLAIMS AND INTERESTS UNDER THE PLAN**

The following is a summary of the classification and treatment of Claims and Interests under the Plan:

| CLASS | TREATMENT |
|---|---|
| **Unclassified.  Allowed Administrative Expense Claims.** | Unimpaired.  Not entitled to vote.<br><br>Subject to the bar date provisions herein, each holder of an Allowed Adminis- |

| Estimated Administrative Expense Claims: $ 200,000.00 | trative Claim against the Debtor shall be paid on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date, or (b) the date such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable.

On or before the Effective Date, the Debtor shall pay all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, in Cash in full.

Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims must be Filed no later than thirty (30) days after the Effective Date.  Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other person or entity, or any of their respective property.

Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case or under any Bankruptcy Code section) shall File and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to File any request for payment of such claims.  Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.

Estimated percentage recovery: 100% |
|---|---|

| | |
|---|---|
| **Unclassified:  Allowed Priority Tax Claims.**<br><br>Estimated Priority Tax Claims: $ 226,971.36 | Unimpaired.  Not entitled to vote.<br><br>To the extent such Claim exists, each holder of an Allowed Priority Tax Claim shall receive one of the following two treatments, as determined by the Debtor in its sole and absolute discretion, on account of and in full satisfaction of such Allowed Priority Tax Claim: (a) Cash on the Effective Date, or on such other date on which such Priority Tax Claim becomes an Allowed Claim, in an amount equal to the amount of the Allowed Priority Tax Claim or (b) equal monthly payments over sixty (60) months with interest at the rate required by 11 U.S.C. §511.  Holders of Priority Tax Claims will not receive any payment on account of penalties with respect to or arising in connection with, such Priority Tax Claims.<br><br>Estimated percentage recovery: 100% |
| **Class 1.  International Bank of Commerce—Allowed Secured Claim.**<br><br>Estimated Class 1 Claims: $ TBD<br><br>Total amount of estimated IBC claim, both secured and unsecured, is $8,900,000. | Impaired. Entitled to vote.<br><br>The IBC Claim shall be paid in full up to the value of the IBC Collateral on the later of: (a) the Effective Date, or (b) the date such Class 1 Claim becomes an Allowed Claim.  To the extent that the IBC Claim exceeds the value of the IBC Collateral, the IBC Unsecured Claim shall be treated as an Allowed Class 4 Claim as described below.<br><br>All default interest, late fees, or other penalties, including, but not limited to, prepayment penalties, yield maintenance premiums and/or late fees provided by the IBC Loan Documents shall be deemed waived as of the Effective Date.<br><br>Estimated percentage recovery: 100% |
| **Class 2.  Van Hessen—Allowed Secured Claim**<br><br>Estimated Class 2 Claims: LVH Pearville LLC represents that the Van Hessen Allowed Secured Claim is approximately $1,750,000 excluding any subrogation claims it may have under the IBC Secured Claim. | Impaired.  Entitled to vote.<br><br>On the Effective Date, all past due amounts owed to Van Hessen, including the principal balance of notes owed by the Debtor to Van Hessen, accrued interest at the contract (non-default) rate, legal fees and out-of-pocket expenses (the "Class 2 Claim") shall be converted to an equity interest in the Debtor of 100%. On or after the Effective Date, the Reorganized Debtor may be converted to a limited liability company which would thereafter have all of the rights, duties and obligations of the Reorganized Debtor hereunder. |
| **Class 3: Materialmens Lien Claims**<br><br>Estimated Class 3 Claims: $ TBD | Impaired. Entitled to Vote.<br><br>Each Senior Contractor holding an Allowed Class 3 Claim shall be paid in full upon the later of: (a) the Effective Date, or (b) the date such Class 3 Claim becomes an Allowed Claim.  In addition to the above, the following conditions shall apply to all Materialmens Lien Claimants: (a) the Senior Contractor shall delivers to Debtor documents releasing any and all liens asserted by the Senior Contractor and its Subcontractors; and (b) the Senior Contractor shall deliver sufficient warranty documentation to the Debtor reinstating any and all warranties regarding construction of the Property.  The Plan contemplates that each Subcontractor shall be paid in full by the Senior Contractor on or before the date that the Senior Contractor receives any payment under this Plan.  To the extent that the Class 3 Claims exceed the value of the Materialmens' liens, the Class 3 Claim shall be treated as an Allowed Class 4 Claim as described below.  Holders of Class 3 Claims will not receive interest on the unpaid |

| | balance of their Class 3 Claims. |
| --- | --- |
| | Any default interest, late fees, or other penalties shall be deemed waived as of the Effective Date.<br><br>Estimated percentage recovery: 100% |
| **Class 4: General Unsecured Claims.**<br><br>Estimated Class 4 Claims: $ TBD | Impaired. Entitled to Vote.<br><br>Each holder of an Allowed Class 4 Claim shall be paid 25% of the Allowed Class 4 Claim on the later of: (a) the Effective Date, or (b) the date such Class 4 Claim becomes an Allowed Claim.   Holders of Class 4 Claims will not receive interest on the unpaid balance of their Class 4 Claims.<br><br>Estimated percentage recovery: 25% |
| **Class 5: Partnership Interests.** | Impaired. Deemed to Reject the Plan.<br><br>The holders of Partnership Interests in the Debtor shall surrender their Partnership Interests.<br><br>Estimated percentage recovery: 0%. |

The Claims and Claim amounts listed above are amounts estimated by the Debtor as of the filing of this Disclosure Statement and all such Claims are still being reviewed by the Debtor. A listing of Claims or any amounts with respect thereto above or elsewhere in this Disclosure Statement shall not constitute, or be deemed to constitute, allowance of such Claims and all such Claims and amounts are subject, and will remain subject, to challenge and objection by the Debtor and the Reorganized Debtor prior to voting on the Plan and at any time thereafter as provided in the Plan.

## V. GENERAL OVERVIEW AND BACKGROUND INFORMATION

**A.   BACKGROUND, GENERAL INFORMATION AND EVENTS LEADING TO THE CHAPTER 11 CASE**

The Debtor is a Texas limited partnership.  JEFCO Development Corporation ("<u>JEFCO</u>") and Maverick Real Estate Investments, LLC, each own a 50% Partnership Interest in the Debtor. JEFCO is the general partner and manager of the Debtor.  (See **<u>Exhibit D-3</u>**: Partnership Structure.)  The Debtor was formed to design, develop, construct and market a master planned development in Houston, Texas (the "<u>Pearville Project</u>").  Prior to the Petition Date, the Debtor completed construction on a shopping center known as The Parks at Boulder Creek.

To finance the Pearville Project, the Debtor sought financing first from IBC.  From August 2004 through September 2006, the Debtor borrowed approximately $20,710,766.00 from IBC in four separate loan transactions.  In addition to funding construction for the shopping center, these funds were used principally to purchase land and bring utilities to the Pearville Project site, including construction of an offsite sanitary sewer and water line, a lift station and a water detention pond.  Completing these utility projects was essential to allow the Debtor to further develop and market the Pearville Project.

As part of the utilities project, the Debtor allowed a portion of the land for the Pearville Project to be annexed by Municipal Utilities District No. 318 ("<u>MUD-381</u>").  As part of that arrangement, the Debtor and MUD-381 entered into certain agreements whereby the Debtor would fund the utilities project and get reimbursed for the development over time from the MUD-381 (the "<u>MUD-381 Receivable</u>").  On its Schedules, the Debtor estimates the value of the MUD-381 Receivable at $1,000,000.00 due to the Debtor in the near future.  This portion of the MUD-381 Receivable is subject to lien claims by Troy Construction LLC and Peltier Brothers

Construction, L.P., totaling approximately $500,000.  Further, IBC claims that it has a security interest in the MUD-381 Receivable.

The original timeline for the Shopping Center's construction was nine (9) months for the hard-shell of the Shopping Center and an additional four (4) months for the build-out of the tenant spaces.  However, due to a myriad of unforeseen factors, both the cost and timeline to complete the project escalated out of control.  In 2008, Shopping Center construction site was damaged by Hurricane Ike, which caused additional delays and costs to repair the damage.  Moreover, the City of Houston delayed issuing necessary permits for over a year while a new sanitary waste lift station was being built.

The Debtor also experienced significant problems with Brewer & Escalante Associates, Inc. ("Brewer") which was the civil engineering firm for the utilities construction.  The Debtor has commenced litigation against Brewer for, among other claims, negligence, professional negligence, negligent misrepresentation, breach of fiduciary duty, and breach of contract.  This action is currently pending in the 280th Judicial District, Harris County, Texas, and is listed as Case No. 2009-04632.

Because of skyrocketing construction costs and delays, the Debtor needed additional financing to complete construction on the Shopping Center.  Unable to secure additional funds from IBC, in October 2008, the Debtor borrowed $4,000,000.00 from Van Hessen.  The proceeds from the Van Hessen Loan were used to pay for cost overages on the utilities, hurricane damages, and other cost overages, including firing the original civil engineer (Brewer) and hiring a replacement to complete the utilities aspect of the project.  The estimated balance of the Van Hessen loan is $1,750,000.

Contemporaneous, with the funding of the Van Hessen Loan, the national and global financial markets began collapsing, which drastically curtailed the Debtor's ability to lease the tenant space in the Shopping Center and reduced the rent rates being charged for the space that the Debtor was able to lease.  As of the Petition Date, 19,525 of the 53,754 available square feet of the Shopping Center were leased to a total of six tenants.  The combined effect of lower rental and occupancy rates, construction cost overages, and other delays resulted in the Debtor not having sufficient funds to pay all of its expenses, including amounts due for continued construction and debt service obligations.  Accordingly, the shopping center was posted for non-judicial foreclosure by IBC in both May and June.

Despite the Debtor's efforts over the months leading to the commencement of these bankruptcy proceedings, the Debtor was unable to secure additional financing and/or modification of its current debt service obligations.  Accordingly, on May 14, 2010, the Debtor voluntarily commenced this Chapter 11 case to protect its assets and to reorganize its business.

## B.      THE DEBTOR'S DEBT STRUCTURE

The Debtor's Debt Structure is as follows:

- International Bank of Commerce—approximately $8,900,000.00 principal balance
- J.A. "Lex" Van Hessen—approximately $1,750,000 principal balance
- Materialmens Lien Claims—approximately (TBD), which includes over-lapping claims of sub-contractors
- General Unsecured Claims—approximately $288,000.00

## C.      SIGNIFICANT POST-PETITION EVENTS

Since the Petition Date, the Debtor has continued to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

1.     **Continuation of Business; Stay of Litigation.**

The Bankruptcy Court has certain supervisory powers over the Debtor's operations during the pendency of the Chapter 11 Case, including the power to approve any transactions that are outside the ordinary course of the Debtor's business.

An immediate effect of the filing of a bankruptcy case is the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoins the commencement or continuation of all litigation against the Debtor.  This injunction will remain in effect until the Effective Date unless modified or lifted by order of the Bankruptcy Court.

2.     **First Day Pleadings.**

Following the filing of the Petition, the Debtor filed, among other pleadings, the following "first day pleadings" with the Bankruptcy Court:

(a)     Emergency Motion for Entry of Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for Interim and Final Orders: (1) Authorizing Use of Cash Collateral; (2) Directing Payment of Rents to the Debtor; (3) Granting Adequate Protection; (4) Scheduling and Approving the Form and Method of Notice for a Final Order; and (5) for Related Relief (the "Cash Collateral Motion");

(b)     Emergency Motion for Interim and Final Orders: (1) Prohibiting Utilities from Altering, Refusing or Discontinuing Services to, or Discriminating Against, the Debtor on Account of Prepetition Amounts Due; (2) Determining that the Utilities are Adequately Assured of Future Payment; (3) Establishing Procedures for Determining Requests for Additional Assurance; and (D) Permitting Utility Companies to Opt-Out of the Procedures Established Herein (the "Utilities Motion"); and

(c)     Application by Debtor for Entry of an Order Authorizing the Employment and Retention of Spencer Crain Cubbage Healy & McNamara, pllc (the "Application to Retain Spencer Crain"); and

*Cash Collateral Motion*.  On May 27, 2010, the Court convened an interim hearing on the Cash Collateral Motion.  At that time, the parties reached an informal oral agreement regarding

interim use of cash collateral.  On June 22, 2010, the Court convened a second interim hearing on the Cash Collateral Motion, which resulted in a second agreed interim order (the "Second Interim Order").  On July 21, 2010, the Court shall convene a third interim hearing on the Cash Collateral Motion, with a final hearing to be held in August 2010.

*Utilities Motion*.  On June 9, 2010, the Court convened a hearing on the Utilities Motion and entered an order granting the motion on June 11, 2010.  There were no objections raised against the Utilities Motion.

*Application to Retain Spencer Crain*.  On May 18, 2010, the Court entered an order granting the Debtor's Application to Retain Spencer Crain as its bankruptcy Counsel.

*Application to Retain David Montgomery*.  On July 12, 2010, the Court entered an order granting the Debtor's Application to Retain David Montgomery as special real estate counsel to the Debtor.

*Application to Retain Brian Rogers*.  On July 12, 2010, the Court entered an order granting the Debtor's Application to Retain Brian Rogers as the Debtor's accounting services professional.

### 3. Compliance with Bankruptcy Code, Bankruptcy Rules, Local Court Rules, and U.S. Trustee Deadlines.

On June 11, 2010, the Debtor filed (and later amended) its Statement of Financial Affairs, Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Lists of Equity Security Holders.

Pursuant to section 341 of the Bankruptcy Code, a meeting of creditors for the Debtor was held on June 15, 2010.

## VI. THE PLAN

The Plan Proponents have proposed the Plan and believe that the classification and treatment of Claims and Partnership Interests provided for in the Plan are consistent with the requirements of the Bankruptcy Code.  Under the Bankruptcy Code, holders of Allowed Claims against the Debtor that are Impaired and that receive distributions under the Plan are entitled to vote on the Plan.  A summary of the classification and treatment of Claims and Interests under the Plan is set forth above in this Disclosure Statement.

**A.     EXIT FINANCING TO BE PROVIDED BY LVH PEARVILLE, LLC**

The Plan contemplates that LVH Pearville, LLC, shall provide the Exit Financing to the Debtor on the Effective Date in an amount sufficient to fund the payment of allowed obligations under the Plan on the Effective Date and to provide additional operating capital for the Reorganized Debtor.  In exchange for providing the Exit Financing, LVH Pearville, LLC, shall receive a first lien on all of the Reorganized Debtor's assets to secure the amount of the Exit Financing as well as any future cash infusions necessary to fund cash flow deficiencies until the project is able to generate a positive cash flow.  In addition, in the event that any portion of the Exit Financing is used to pay the Allowed Secured Claim of IBC, LVH Pearville LLC may elect to receive an assignment of IBC's Secured Claim and associated security documents and rights granted thereunder.

**B.     TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN**

The Plan provides for the payment of Claims against and Interests in the Debtor, including the treatment of unclassified Claims.  The principal administrative claims known to the Debtor are the fees and expenses of the Debtor's attorneys and accountant.

## 1.     Administrative Claims.

### a.     Generally.

Subject to the bar date provisions herein, the Reorganized Debtor shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date, or (b) the date such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable.

### b.     Payment of Statutory Fees.

On or before the Effective Date, the Debtor or Reorganized Debtor shall pay all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, in Cash in full.

### c.     Bar Date For Administrative Claims.

#### i.     General Provisions.

Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Effective Date.  Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other person or entity, or any of their respective property.

Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

### ii. Professionals.

All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case or under any Bankruptcy Code section) shall File and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date.

### iii. Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described in subparagraph (ii) above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to File any request for payment of such claims.  Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.

{205779}

### 2.      Priority Tax Claims.

To the extent such claims exist, each holder of an Allowed Priority Tax Claim shall receive one of the following two treatments, as determined by the Reorganized Debtor in its sole and absolute discretion, on account of and in full satisfaction of such Allowed Priority Tax Claim: (a) Cash on the Effective Date, or on such other date on which such Priority Tax Claim becomes an Allowed Claim, in an amount equal to the amount of the Allowed Priority Tax Claim or (b) payment in sixty equal monthly payments with interest calculated in accordance with 11 U.S.C. section 511.  Holders of Priority Tax Claims will not receive any payment on account of penalties with respect to or arising in connection with, such Priority Tax Claims.

## C.      TREATMENT OF CLASSIFIED CLAIMS UNDER THE PLAN

### 1.      Class 1 – International Bank of Commerce

The holder of the Class 1 Claim is entitled to vote.  The Class 1 Claim shall be paid in full up to the value of the IBC Collateral on the later of: (a) the Effective Date, or (b) the date such Class 1 Claim becomes an Allowed Claim.  To the extent that the IBC Claim exceeds the value of the IBC Collateral, the IBC Unsecured Claim shall be treated as an allowed Class 4 Claim as described below.

All default interest, late fees, or other penalties, including, but not limited to, prepayment penalties, yield maintenance premiums and/or late fees provided by the IBC Loan Documents shall be deemed waived as of the Effective Date.

### 2.      Class 2 –Van Hessen

The holder of the Class 2 Claim is entitled to vote.  On the Effective Date, all past due amounts owed to Van Hessen, including the principal balance of notes owed by the Debtor to Van Hessen, accrued interest at the contract (non-default) rate, legal fees and out-of-pocket

expenses (the "Class 2 Claim") shall be converted to an equity interest in the Debtor of 100%. On or after the Effective Date, the Reorganized Debtor may be converted to a limited liability company which would thereafter have all of the rights, duties and obligations of the Reorganized Debtor hereunder.

3.      **Class 3 – Materialmens Lien Claims.**

Each Senior Contractor holding an Allowed Class 3 Claim shall be paid in full upon the later of: (a) the Effective Date, or (b) the date such Class 3 Claim becomes an Allowed Claim. In addition to the above, the following conditions shall apply to all Materialmens Lien Claimants: (a) the Senior Contractor shall delivers to Debtor documents releasing any and all liens asserted by the Senior Contractor and its Subcontractors; and (b) the Senior Contractor shall deliver sufficient warranty documentation to the Debtor reinstating any and all warranties regarding construction of the Property.  The Plan contemplates that each Subcontractor shall be paid in full by the Senior Contractor on or before the date that the Senior Contractor receives any payment under this Plan.  To the extent that the Class 3 Claims exceed the value of the Materialmens' liens, the Class 3 Claim shall be treated as an Allowed Class 4 Claim as described below.  Holders of Class 3 Claims will not receive interest on the unpaid balance of their Class 3 Claims.

4.      **Class 4 - General Unsecured Claims.**

The holders of Class 4 Claims are entitled to vote on the Plan.  Each holder of an Allowed Class 4 Claim shall be paid 25% of the Allowed Class 4 Claim on the later of: (a) the Effective Date, or (b) the date such Class 4 Claim becomes an Allowed Claim.  Holders of Class 4 Claims will not receive interest on the unpaid balance of their Class 4 Claims.

**5.      Class 5 - Partnership Interests**

Class 5 is impaired and is deemed to reject the Plan.   The holders of Partnership Interests in the Debtor shall surrender their Partnership Interests.

**E.      MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

**1.      Effective Date.**

The "Effective Date" of this Plan shall be 10 days after the Confirmation Order becomes a Final Order.

**2.      Effective Date Conditions.**

Notwithstanding any other provision of this Plan, the Effective Date shall not occur until the following conditions have been either satisfied or waived by the Debtor or the Reorganized Debtor (or will be satisfied or waived contemporaneously with the occurrence of the Effective Date):  (1) the Confirmation Order, in form and substance satisfactory to the Debtor or the Reorganized Debtor and LVH Pearville LLC, shall have become a Final Order and not subject to appeal; (2) the Exit Financing contemplated by the Plan which is due to have been paid on the Effective Date shall have been funded to the Debtor; and (3) Paul J A "Lex" Van Hessen shall have delivered to the Debtor a personal guarantee of LVH Pearville LCC performance of its obligations hereunder.

**3.      Notice of Occurrence of Effective Date.**

The Debtor shall give notice of the Effective Date.

**4.      Vesting of Assets and Operations of Property.**

**a)**      All property of the estate and the Property shall be transferred to the Reorganized Debtor on the Effective Date.

**b)**      On the Effective Date, pursuant to the Plan and the Confirmation Order, any receiver, custodian or similar person or entity appointed prior to the Effective Date for the Debtor or any of its property shall be terminated and discharged from its responsibilities and duties and all property, including Cash, of the Debtor held by such receiver, custodian or

{205779}

similar person or entity shall be immediately turned over to the Reorganized Debtor, without setoff or offset.

**5. Means to Implement the Plan.**

The Reorganized Debtor shall make all distributions required under the Plan out of the Exit Financing.

**6. Objections to Claims/Administrative Claims/Interests.**

**a) Objections to Claims or Interests; Prosecution of Disputed Claims or Disputed Interests.**

LVH Pearville LLC, as a joint-proponent of the Plan, or the Reorganized Debtor shall have the exclusive right to object to the allowance, amount or classification of Claims or Interests asserted in the Reorganization Case, and such objections may be litigated to Final Order by LVH Pearville, LLC, acting on behalf of the Reorganized Debtor.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims or Interests shall be filed no later than ninety days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court.  Such extensions may be obtained by LVH Pearville, LLC, upon *ex parte* motion.

**b) Estimation of Disputed Claims.**

The Debtor, and after the Effective Date, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate for all purposes, including distribution under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim or Interest.  The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

c)        **No Distribution on Account of Disputed Claims.**

No Distribution shall be made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim or Interest until the entire Claim or Interest becomes an Allowed Claim or an Allowed Interest.  Disputed Claims.

Pending resolution of a Disputed Claim, all Cash to be distributed to the holder of the Disputed Claim shall be placed in a segregated bank account at a federally insured financial institution and maintained by the Reorganized Debtor until distribution to the holder of such Claim under the Plan.  Distribution shall be made only from the Disputed Claims reserve and only at such time as a particular Claim is determined to be an Allowed Claim.  The holder of a Disputed Claim that is ultimately allowed shall have no recourse against the Reorganized Debtor or its property for the payment of its Allowed Claim.  No interest shall accrue or will be paid with respect to any Disputed Claim for the period from the Effective Date to the date a distribution, if any, is made with respect to said Disputed Claim upon becoming an Allowed Claim.  To the extent that a Disputed Claim ultimately is disallowed or allowed in an amount less than the amount of the reserves for such Disputed Claim, any resulting surplus in the reserve shall be transferred from the reserve to the holders of allowed unsecured claims.

7.        **Claims Against Others**

The Debtor believes it has valid claims against various parties including but not limited to the claim asserted against Brewer for among other claims, negligence, professional negligence, negligent misrepresentation, breach of fiduciary duty, and breach of contract.  This action is currently pending in the280th Judicial District, Harris County, Texas, and is listed as Case No. 2009-04632.  The Debtor does not know what its recovery, if any, will be in this matter.

## VII. TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

The Debtor by the Confirmation Order will assume the Tenant Leases except as provided on EXHIBIT D-4 to the Disclosure Statement.  All other executory contracts or leases not expressly assumed prior to confirmation shall be rejected by the Confirmation Order.

## VIII. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and certain U.S. holders of Claims and Interests.

The following summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date hereof.  Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section.  Certain tax aspects of the Plan are uncertain due to the lack of applicable regulations and other tax precedent.  The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan.  Thus, no assurance can be given as to the interpretation that the IRS will adopt.

TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND ANY INTERESTS ARE HEREBY NOTIFIED THAT (a) ANY DISCUSSION OF TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE

{205779}

OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE TAX CODE, AND (b) THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE PROMOTION OF THE PLAN.

HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT THEIR TAX ADVISOR TO DETERMINE THE AMOUNT AND TIMING OF ANY INCOME OR LOSS SUFFERED AS A RESULT OF THE CANCELLATION OF THE CLAIMS HELD BY SUCH PERSON, WHETHER SUCH INCOME OR LOSS IS ORDINARY OR CAPITAL AND THE TAX EFFECT OF ANY RIGHT TO, AND RECEIPT OF DEFERRED PAYMENT.

THE ABOVE DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, ALL HOLDERS SHOULD CONSULT THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## IX.  LIQUIDATION ANALYSIS UNDER CHAPTER 7

Under the Bankruptcy Code, in order for a plan to be confirmed, each creditor must receive or retain under the Plan a recovery that has a value at least equal to the value of the distribution that such creditor would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

A liquidation analysis of the Debtors' businesses is attached hereto as EXHIBIT D-5. Pursuant to the Debtor's liquidation analysis, the Debtor believes that recoveries under a Chapter 7 liquidation scenario would be significantly lower than that proposed by the Plan for a variety of reasons. First, the sale of the Debtor's primary asset under a compressed timeframe and the distressed nature of a Chapter 7 liquidation will most likely result in lower sale values than the

Debtor will receive under the terms of the Plan due to the lack of liquidity in today's market. Second, the conversion of the case to Chapter 7 liquidation would necessitate the payment of fees to the Chapter 7 Trustee, and attorneys, accountants and other professionals retained by the Chapter 7 Trustee, for disposition of the assets. These fees directly reduce any recovery otherwise available to creditors and/or the holders of Partnership Interests.

Accordingly, each holder of a Claim will receive or retain under the Plan a recovery that has a value at least equal to the value of the distribution that such creditor would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

THE PLAN PROPONENTS BELIEVE THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED HEREIN BECAUSE IT SHOULD PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN A CHAPTER 7 LIQUIDATION TO THE HOLDERS OF SECURED AND UNSECURED CLAIMS WHO WOULD LIKELY RECEIVE LESS IN A CHAPTER 7 LIQUIDATION. IN ADDITION, OTHER ALTERNATIVES WOULD INVOLVE DELAY, UNCERTAINTY, AND SUBSTANTIAL ADMINISTRATIVE COSTS.

## X. CONFIRMATION PROCEDURE

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

### A.     VOTING AND OTHER PROCEDURES

A Ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement submitted to the holders of Claims that are entitled to vote to accept or reject the Plan. Each holder of a Claim in Classes 1, 2, 3, and 4 shall be entitled to vote to accept or reject the Plan. Each holder of an Interest in Class 5 is deemed to have rejected the Plan.

Pursuant to the provisions of the Bankruptcy Code, only holders of claims in classes of claims that are impaired under the terms and provisions of a chapter 11 plan and are to receive distributions thereunder are entitled to vote to accept or reject the plan. Classes of claims in which the holders of claims and interests will not receive or retain any property under a chapter

{205779}

21

11 plan are deemed to have rejected the plan and are not entitled to vote to accept or reject the plan. Classes of claims in which the holders of claims or interests are Unimpaired under a Chapter 11 plan are deemed to have accepted the Plan and also are not entitled to vote to accept or reject the plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (i) claims, as acceptance by creditors actually voting in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims; and (ii) interests, as acceptance by interest holders in that class actually voting that hold at least two-thirds in number of the shares of the common stock of a debtor.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or otherwise in accordance with the provisions of the Bankruptcy Code.

With respect to the Plan, any holder of a Claim in an Impaired Class (i) whose Claim has been listed by the Debtor in the Schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated), or (ii) who filed a proof of claim on or before the applicable bar date (or, if not filed by such date, any proof of claim filed within any other applicable period of limitations or with leave of the Bankruptcy Court), which Claim has not been disallowed and is not the subject of an objection, is entitled to vote. Holders of Claims that are disputed, contingent and/or unliquidated are entitled to vote their Claims only to the extent that such Claims are Allowed for the purpose of voting pursuant to an order of the Bankruptcy Court. The Debtor may seek a determination that any Class of Claims that is entitled to vote to accept or reject the Debtor's Plan that does not vote to accept or reject the Debtor's Plan be deemed to accept the Plan, as applicable.

After carefully reviewing this Disclosure Statement, including any exhibits, each holder of an Allowed Claim or Partnership Interest entitled to vote may vote whether to accept or reject the Debtor's Plan.  A Ballot for voting on the Plan accompanies this Disclosure Statement. If you hold a Claim or Partnership Interest in more than one Class and you are entitled to vote Claims in more than one Class, you may receive a Ballot or Ballots, which will permit you to vote in all appropriate Classes of Claims.  Please vote and return your Ballot to Spencer Crain Cubbage Healy & McNamara, pllc, as follows, whether by U.S. mail, or by hand delivery or courier service:

> **Spencer Crain Cubbage Healy & McNamara, pllc**
> **Attention: Ella Goettle**
> **1330 Post Oak Blvd., Suite 1600**
> **Houston, Texas 77056**

ANY EXECUTED BALLOT THAT FAILS TO INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.  BALLOTS RETURNED TO SPENCER CRAIN CUBBAGE HEALY & MCNAMARA, PLLC BY FACSIMILE TRANSMISSION OR ANY OTHER ELECTRONIC MEANS WILL NOT BE COUNTED.

> **THE VOTING DEADLINE IS**
> **5:00 P.M., CENTRAL**
> **TIME ZONE, ON**
> **_____ __, 20____.**

APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.  ALL CREDITORS THAT ARE ENTITLED TO VOTE TO ACCEPT OR

{205779}

REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.

**Ballots must be *received* by Spencer Crain Cubbage Healy & McNamara, pllc by the Voting Deadline.**  If a Ballot is received after the Voting Deadline, it will not be counted. Complete the Ballot by providing all the information requested, and sign, date and return the Ballot by mail, overnight courier or personal delivery to Spencer Crain Cubbage Healy & McNamara, pllc at the address set forth above.

TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN THE TIME AND DATE SET FORTH IN THE ACCOMPANYING NOTICE.

ANY OBJECTIONS TO THE CONFIRMATION OF THE PLAN MUST BE FILED IN ACCORDANCE WITH AND NO LATER THAN THE TIME AND DATE SET FORTH IN THE ACCOMPANYING NOTICE. IN ADDITION, ALL OBJECTIONS MUST ALSO BE SERVED ON ADAIR & MYERS PLLC, 3120 SOUTHWEST FREEWAY, SUITE 320, HOUSTON, TEXAS 77098, ATTN: THOMAS W. GRAVES

If you are entitled to vote on the Plan and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the procedures for voting on the Plan, please telephone the Voting Agent at the following telephone number: **1-713-963-3670**.

**B.     DISCLAIMERS AND ENDORSEMENTS**

This Disclosure Statement contains information about the Debtor's Plan.  Holders of Claims and Partnership Interests are urged to study the text of the Plan carefully to determine the impact of the Plan on their Claims or Partnership Interests and to consult with their financial, tax and legal advisors.

{205779}

Nothing contained in this Disclosure Statement or the Plan will be deemed an admission or statement against interest that can be used against the Debtor in any pending or future litigation. Any reference to creditors or Claims or Partnership Interests in this Disclosure Statement is not an admission with respect to the existence, ownership, validity, priority, or extent of any alleged Lien, Claim, Partnership Interest or encumbrance.

Certain statements and assertions in this Disclosure Statement may be subject to dispute by parties in interest.

## C.   THE CONFIRMATION HEARING

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing with respect to the Plan.  The Confirmation Hearing in respect of the Plan has been scheduled for _____ ___, 20___, and at ____ a.m./p.m. before the Honorable Karen K. Brown, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Texas, at the United States Courthouse for the Southern District of Texas, Courtroom No. 403.   The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice other than an announcement of the adjourned date made at the Confirmation Hearing or posted at the courthouse at the Confirmation Hearing or at an adjournment thereof.   Any objection to confirmation (i) must be made in writing, (ii) must specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim or a description of the interest in the Debtor held by the objector, and (iii) must be timely made.  Any such objections must be filed with the Bankruptcy Court and served so that they are received by the Bankruptcy Court, the Debtor's counsel and counsel for LVH Pearville LLC, on or before _____ ___, 2010 at 5:00 p.m.:

**Spencer Crain Cubbage Healy & McNamara, pllc**
**Thomas H. Grace**
Texas Bar No. 00785453

Federal Bar No. 12618
1330 Post Oak Blvd., Suite 1600
Houston, TX  77002
(713) 963-3669  Telephone
(713) 963-4663  Fax
tgrace@spencercrain.com

## D.      CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are that the plan is (i) accepted by all Impaired Classes of Claims or, if rejected by an Impaired Class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, (ii) feasible, and (iii) in the "best interests" of creditors that are Impaired under the Plan.

## E.      UNFAIR DISCRIMINATION AND FAIR AND EQUITABLE TESTS

Under the Bankruptcy Code, a plan does not have to be accepted by every class of creditors or interest holders to be confirmed.  If a class of claims rejects a plan or is deemed to reject a plan, the plan proponent has the right to request confirmation of the plan pursuant to Section 1129(b) of the Bankruptcy Code the so-called "cramdown" provision of the Bankruptcy Code.  Section 1129(b) permits the confirmation of a plan notwithstanding the non-acceptance of such plan by one or more impaired classes of claims and interests.  Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class, and meets the other legal criteria for confirmation.

In the event that any Class of Claims or Partnership Interests fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the

{205779}

26

Bankruptcy Code, and/or (b) modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

Accordingly, to obtain nonconsensual confirmation of the Plan, it must be demonstrated to the Bankruptcy Court that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Impaired, non-accepting Class.   The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable."   The Bankruptcy Code establishes "cram down" tests for Classes of Secured Claims, unsecured Claims and Interests that do not accept the plan, as follows:

### 2.      Secured Creditors

Either (a) each Impaired Secured creditor retains the Liens securing its Secured Claim and receives on account of its Secured Claim deferred cash payments (x) totaling at least the Allowed Amount of the Secured Claim and (y) having a present value at least equal to the value of the Secured creditor's collateral, (b) each Impaired Secured creditor realizes the "indubitable equivalent" of its Allowed Secured Claim, or (c) the property securing the Claim is sold free and clear of Liens with the Secured creditor's Lien to attach to the proceeds of the sale and such Lien on proceeds is treated in accordance with clause (a) or (b) of this subparagraph.

### 3.      Unsecured Creditors

Either (a) each Impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its Allowed Claim, or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting Class will not receive any property under the plan, and the "best interest" test is met so that each Impaired unsecured creditor recovers at least what that creditor would receive if the case was converted to a chapter 7 case.

### 4.    Holders of Interests

Either (a) each holder of Impaired Interests receives or retains under the plan property of a value equal to the greatest of the Allowed Amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) no holder of junior interests receives or retains any property, and the "best interest" test is met, so that each Impaired Interest holder recovers at least what that Partnership Interest holder would receive if the case was converted to a chapter 7 case.

### 5.    No Unfair Discrimination

In addition, the "cram down" standards of the Bankruptcy Code prohibit "unfair discrimination" with respect to the claims of any impaired, non-accepting class. While the "unfair discrimination" determination depends upon the particular facts of a case and the nature of the claims at issue, in general, courts have interpreted the standard to mean that the impaired, non-accepting class must receive treatment under a plan of reorganization which allocates value to such class in a manner that is consistent with the treatment given to other classes with claims against the debtor of equal or junior status.

All Classes of Claims will receive distributions under the Plan; thus, no Classes of Claims are conclusively presumed to have rejected the Plan.  The Debtor believes that the treatment of all Classes of Claims and Interests under the Plan satisfies the "no unfair discrimination" requirement for nonconsensual confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  With respect to each such Impaired, non-accepting Class, there is no Class of equal priority receiving more favorable treatment under the Plan, and no Class that is junior to such Impaired, non-accepting Class will receive or retain any property under the Plan on account of the Claims or Interests in such Class.

## F.       FEASIBILITY

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization unless the liquidation of the debtor is provided for in the plan.  Assuming the conditions precedent to the occurrence of the Effective Date are met, including, the funding of the Exit Financing contemplated by the Plan, it is not likely that the Confirmation will be followed by liquidation or the need for further financial reorganization of the Debtor.

## G.       BEST INTEREST TEST

In order to confirm a plan of reorganization, the Bankruptcy Court must determine that the Plan is in the best interests of all classes of creditors and equity security holders impaired under that Plan. The "best interest" test requires that the Bankruptcy Court find that the plan provides to each member of each impaired class of claims and interests (unless each such member has accepted the plan) a recovery which has a value at least equal to the value of the distribution that each creditor or interest holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

All Classes of Claims will receive distributions under the Plan; thus, no Classes of Claims are conclusively presumed to have rejected the Plan.  The Debtor requests confirmation of the Plan over the rejection of any Classes.  In so doing, the Debtor seeks to establish that the Plan complies with the best interest of creditors test with respect to any such Class or Classes, and satisfy all other legal criteria for confirmation.

As reflected in the discussion above, and as demonstrated in the Liquidation Analysis contained in this Disclosure Statement**,** the Debtor believes that the Plan provides to each holder of a Claim and Interest holder a value at least equal to the value of the distribution that each holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

**H.      CERTAIN RISK FACTORS TO BE CONSIDERED**

HOLDERS OF CLAIMS AGAINST AND PARTNERSHIP INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN (AND ANY DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE), BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.   THESE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND THE IMPLEMENTATION OF THE PLAN.

**I.      CERTAIN BANKRUPTCY CONSIDERATIONS**

**1.      Risk of Liquidation of the Debtor's Estate**

If the Plan is not confirmed and consummated, there can be no assurance that the Debtor's Chapter 11 Case will continue as chapter 11 reorganization case rather than be converted to liquidation, or that any alternative plan of reorganization would be on terms as favorable or more favorable to holders of Claims and Partnership Interests as the terms of the Plan.  If a liquidation or different reorganization were to occur, the distributions to certain holders of Allowed Claims may be reduced, or possibly completely eliminated.  As previously noted, the Debtor believes that in a liquidation under chapter 7, additional administrative expenses of a chapter 7 trustee and such trustee's attorneys, accountants, and other professionals, would cause a diminution in the value of the Debtor's Estate.  In addition, certain additional Claims may arise in a chapter 7 liquidation and from the rejection of unexpired leases and other executory contracts in connection with any cessation of the Debtor's operations.  As described above, this might negatively impact the amount of distributions under the Plan, if any, to holders of Allowed Claims or Allowed Partnership Interests.  As a result of these circumstances, the

{205779}

Debtor believes that the Plan provides a significantly higher return to holders of Claims against and Partnership Interests in the Debtor, as compared to liquidation.

### 2.        Risk of Non-Occurrence of the Effective Date

The occurrence of the Effective Date in the Plan is conditioned upon the happening of certain events.  There can be no assurance that all of these events will occur or that those that do not occur will be waived.  Accordingly, even if the Plan is confirmed, there can be no assurance that the Effective Date will occur.

### 3.        Uncertainty Regarding Objections to Claims

The Plan provides that certain objections to Claims can be filed with the Bankruptcy Court after the Effective Date.  A creditor may not know that its Claim will be objected to until after the Effective Date.

### XI. THIRD PARTY CLAIMS

Under the Bankruptcy Code, the Debtor possesses claims against third parties that arise either under the Bankruptcy Code or existing law.  In connection with this case, the Debtor discloses the following:

(a)      The Debtor believes it has valid claims against various parties including but not limited to the claim asserted against Brewer & Escalante Associates, Inc. for among other claims, negligence, professional negligence, negligent misrepresentation, breach of fiduciary duty, and breach of contract.  This action is currently pending in the280th Judicial District, Harris County, Texas, and is listed as Case No. 2009-04632.

(b)      The Debtor possesses claims against insiders for payments made within one year of filing as set forth on Exhibit D-3.  The payments to the insiders are either: (i) pass through payments of non-Debtor funds; or (ii) payment of property management fees.  The

Debtor has not conducted a complete analysis of other avoidance claims arising under the Bankruptcy Code.

## XII. CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to any alternative.  In addition, any other alternative would involve significant delay, litigation, uncertainty, substantial additional administrative costs, and may result in the Debtor's liquidation. The Debtor urges holders of Impaired Claims and Partnership Interests against the Debtor to vote in favor of the Plan.

Dated:  July 21, 2010

DISCLOSURE STATEMENT FILED BY:

By:     /s/ Thomas H. Grace
        **Thomas H. Grace**
        Texas Bar No. 00785453
        Federal Bar No. 12618
        SPENCER CRAIN CUBBAGE HEALY &
        MCNAMARA, PLLC
        1330 Post Oak Blvd., Suite 1600
        Houston, TX  77002
        (713) 963-3669  Telephone
        (713) 963-4663  Fax

        and

        **Meagan Martin**
        Texas Bar No. 24050997
        Federal Bar No. 1045350
        1201 Elm Street, Suite 4100
        Dallas, Texas 75270
        (214)290-0029   Telephone
        (214)290-0099  Fax

        **BANKRUPTCY COUNSEL FOR
        PEARVILLE, L.P.**

        AND

/s/ Thomas W. Graves

**Thomas W. Graves**
Texas Bar No. 08312500
Marc D. Myers
ADAIR & MYERS P.L.L.C.
3120 Southwest Freeway, Suite 320
Houston, Texas 77098
(713)522-2270   Telephone
(713)522-3322  Fax

**COUNSEL FOR LVH PEARVILLE LLC**