

ENTERED
08/17/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re: §
 §  Case No. 10-34074
PEARVILLE, L.P. §
 §  Chapter 11
Debtor. §

FINAL ORDER AUTHORIZING
USE OF CASH COLLATERAL AND FOR RELATED RELIEF

Upon further consideration of the emergency motion (the "Motion" Dkt. No. 4) of the above-captioned Debtor and Debtor-in-Possession (the "Debtor"), seeking entry of an order pursuant to sections 361 and 363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure: (1) authorizing the Debtor to use cash collateral; (2) directing payment of rents to the Debtor; (3) granting adequate protection; (4) scheduling and approving the form and method of notice of the final hearing on the Motion[1]; and (5) for other related relief as necessary; and the Third Interim Order **Pursuant To Sections 361 And 363 Of The Bankruptcy Code And Bankruptcy Rule 4001 For Interim And Final Orders: (1) Authorizing Use Of Cash Collateral; (2) Directing Payment Of Rents To The Debtor; (3) Granting Adequate Protection; (4) Scheduling And Approving The Form And Method Of Notice For A Final Order; And (5) For Related Relief** (the "Third Interim Order" Dkt. No. 71); a hearing to consider the interim relief requested in the Motion having been held and concluded (the "Final Hearing"); all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; it appearing to the Court that granting the interim relief requested is fair and reasonable and in the best interest of the Debtor, its estate and its creditors

---

[1] All capitalized terms not defined herein are defined in the Motion.

1

1989403v3

and is essential for the continued operation of the Debtor's business; upon consideration of the agreement of the Debtor, International Bank of Commerce ("IBC"), Paul J. A. "Lex" Van Hessen ("Van Hessen") and Tribble & Stephens ("T&S") to the Debtor's continued use of cash collateral pursuant to the terms of this Final Order and the Budget (Exhibit A attached hereto) incorporated herein, the Court hereby makes the following findings of fact and conclusions of law as set forth below:[2]

## I. Findings of Fact

1. Appropriate notice and opportunity for hearing have been given for the Motion in accordance with the provisions of sections 361, 362, and 363 of the Bankruptcy Code. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (M), and (O) and is governed by sections 361, 362, and 363 of the Bankruptcy Code.

2. On May 14, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 Title 11 of the Bankruptcy Code (the "Petition Date").

3. The Debtor is in possession of its property and managing its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No trustee has been appointed and no official committee of unsecured creditors (the "Committee") has been established in this case.

5. As of the Petition Date, the Debtor was indebted and liable without recourse, counterclaims or offset of any kind pursuant to that certain Real Estate Lien Note executed by Debtor payable to the order of International Bank of Commerce ("IBC") dated September 6, 2006 in the original amount of $8,400,000.00, as the same may be amended, renewed or

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

rearranged from time to time (the "$8,400,000 Note"). The $8,400,000 Note is secured by a Deed of Trust of even date therewith covering the property more particularly described therein (the "$8,400,000 Deed of Trust") and an Assignment of Leases dated of even date therewith. The property covered by said Deed of Trust and the Assignment of Leases is sometimes collectively referred to herein as the "Property." The Deed of Trust and the Assignment of Leases secure Debtor's indebtedness to IBC and/or assign leases and rents therefrom pursuant to the terms of the $8,400,000 Note, $8,400,000 Deed of Trust, and Assignment of Leases. Pursuant to the $8,400,000 Deed of Trust, Debtor, *inter alia*, granted first priority liens, security interests, and assignments in and to the real property described therein and the proceeds therefrom including lease payments and rents made to Debtor, all as further described in the $8,400,000 Deed of Trust and the Assignment of Leases (collectively, the "Collateral").

6.   As of the Petition Date, the Debtor was indebted and liable without recourse, counterclaim or offset of any kind pursuant to that certain real estate lien note executed by Debtor payable to the order of IBC dated August 17, 2004 in the original principal amount of $7,600,000 (the "$7,600,000 Note"). The $7,600,000 Note is secured by a deed of trust of even date therewith covering the property more particularly described therein (the "$7,600,000 Deed of Trust" and in conjunction with the $8,400,000 Deed of Trust the "Deeds of Trust"). Pursuant to the $7,600,000 Deed of Trust, Debtor, *inter alia*, granted first priority liens, security interests, and assignments in and to the real property described in the $7,600,000 Deed of Trust. The Debtor asserts that its interest in the real estate which served as security for the $7,600,000 Note was foreclosed on December 1, 2009.

7.   The $8,400,000 Note and the $7,600,000 Note are sometimes herein collectively referred to as the "Notes" and the "Prepetition Indebtedness".

3

8. As of the Petition Date, (a) the Notes, Deeds of Trust and Assignment of Leases are valid and binding agreements and obligations of the Debtor, and are ratified, affirmed and enforceable against the Debtor and the Collateral in accordance with their respective terms, (b) the Debtor's obligation to pay the Notes to IBC is (except as otherwise provided herein or specifically permitted under the Notes, Deeds of Trust and Assignment of Leases) secured by perfected first priority liens and security interests in and to the Collateral, which liens and security are valid, perfected, enforceable and non-avoidable, (c) as of May 14, 2010, IBC's claim was in the approximate amount of $509,352.75 as due and owing on the $7,600,000 Note and $8,598,577.65 as due and owing on the $8,400,000 Note with fees, interest and other costs continuing to accrue, (d) the Debtor's obligations under the Prepetition Indebtedness constitute allowable claims against the Debtor and are not subject to subordination pursuant to section 510(c) of the Bankruptcy Code and (e) the Debtor (or any party acting by, through or on behalf of the Debtor) shall not assert any claims, counterclaims, setoff, surcharge claim, recharacterization claim or defense of any kind or nature which would in any way affect the validity, enforceability and non-avoidability of the Prepetition Indebtedness or IBC's security interests, in liens on, or assignment of the Collateral or reduce or affect the Debtor's obligation to pay the Prepetition Indebtedness. In addition, IBC asserts that it is cross-collateralized with respect to the Prepetition Indebtedness pursuant to the Notes, the Assignment of Leases, the applicable financing statements, and the Deeds of Trust.

9. By operation of section 363(b) of the Bankruptcy Code, all proceeds and revenues generated from the disposition of the Collateral constitutes IBC's cash collateral (the "Cash Collateral").

10. Paul J.A. Van Hessen ("Van Hessen") holds a security interest in the Cash Collateral junior to that of IBC's interest in the Cash Collateral.

11. The Debtor may use Cash Collateral in which the IBC and Van Hessen have a security interest in accordance with the terms, conditions, and limitations set forth in the budget attached hereto as Exhibit A (the "Budget") and until the expiration of the Budget unless specifically agreed to by IBC or pursuant to Court order. The Debtor's operations require that from September 1, 2010 to September 30, 2010, the Debtor use up to a maximum of $20,450 ~~ (the "Maximum Permitted Amount") of Cash Collateral in which IBC and Van Hessen have an interest to preserve the assets of its estate and to enable its operations to continue..

12. Not less than 14 days prior to the expiration of the then applicable budget, the Debtor will provide to IBC a proposed budget. IBC will have sole and absolute discretion to approve or disapprove the Debtor's proposed budget. Without waiver of the foregoing, all Cash Collateral used by the Debtor after expiration of the Budget, in addition to the amounts set forth in the Budget, extension of the Budget or as may be approved in writing by IBC (which approval shall be granted or denied in the exercise of IBC's sole and absolute discretion), are hereby entitled to all of the protections and benefits of this Final Order, which shall continue in full force and effect. Nothing contained herein shall preclude or otherwise limit the Debtor from seeking Court approval, upon notice and a hearing, to use Cash Collateral following the expiration of the Budget or any extension to the budget.

13. As adequate protection to IBC and Van Hessen (collectively, the "Secured Lenders") for the use of any of their Cash Collateral, (a) the Debtor hereby waives any claims it may have pursuant to Bankruptcy Code § 552(b) and stipulates that any and all security interests and liens granted to IBC and Van Hessen prepetition, but without altering the priority positions

5

of those interests as existing prepetition, in real or personal property of the Debtor and to the proceeds, products, offspring or profits thereof shall continue and attach to any such postpetition proceeds, products, offspring or profits of such real or personal property to the same extent as they existed prepetition to replace any Cash Collateral used pursuant to the terms hereof (the "Continuing Liens"); provided, however, that such Continuing Liens shall continue to be valid, perfected and enforceable without the necessity of further actions (including, the filing of any notices with any governmental authority); provided, further, that (a) if in fact the Continuing Liens fail to adequately protect the Secured Lenders against a decrease in their interest in the Cash Collateral, the Secured Lenders shall be granted a section 507(b) superpriority administrative claim and (b) during the period commencing on the date hereof and ending on the effective date of any Court approved plan of reorganization, the Debtor shall provide postpetition and accountings to the Secured Lenders of the type received from the Debtor prepetition, and such other reports as may be reasonably requested by the Secured Lenders.

## II. Conclusions of Law

14. The authorization and terms contained in this Final Order were negotiated at arm's length, for reasonably equivalent value, by the Debtor, IBC, Van Hessen, and T&S and are granted on terms and subject to provisions and conditions which are fair and reasonable under the circumstances and enforceable accordance herewith.

15. The Secured Lenders, as the holders of secured claims against the Debtor, are entitled to adequate protection of their interests in Cash Collateral under 11 U.S.C. §§ 361, 362, and 363, as provided below.

16. The entry of this Final Order is in the best interests of the Debtor, its creditors, and its estate, and it is necessary for the continued operations of the Debtor's business.

### III. <u>Orders of the Court</u>

BASED UPON THE FOREGOING, it is therefore ORDERED:

17. All objections to the Motion or the relief requested therein that have not been made and/or have been made and have been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled on the merits.

18. The Debtor is directed to notify each of its tenants that all rental payments are to be made to the Debtor and not to IBC.

19. During the period commencing on the date hereof, the Debtor may use Cash Collateral in which the Secured Lenders have a security interest up to the Maximum Permitted Amount to fund the line item disbursements set forth in the Debtor's Budget of cash receipts and disbursements attached hereto as Exhibit A (the "<u>Budget</u>"). The Debtor shall use Cash Collateral solely in accordance with the Budget, however, the Debtor may exceed any line item in the Budget by up to five (5%) percent, so long as the aggregate amount of the Budget on a monthly basis is not exceeded by more than ten (10%) percent. The Debtor shall not make any expenditures of Cash Collateral except as specifically authorized by the terms contained herein or as specifically authorized in advance and in writing by IBC. Without waiver of the foregoing, all Cash Collateral used by the Debtor after expiration of the Budget or in addition to the amounts set forth in the Budget, as may be approved in writing by IBC (which approval shall be granted or denied in the exercise of IBC's sole and absolute discretion), shall likewise be entitled to all of the protections and benefits of this Final Order, which shall remain in full force and effect.

20. The Debtor anticipates needing to use additional Cash Collateral to fund certain tenant improvement obligations. As such need arises, the Debtor shall seek authorization for

such expenditures from IBC. In the event that IBC does not authorize the expenditure, the Debtor may seek authorization for the tenant improvement expenditure from this Court on an expedited basis after notice and a hearing.

21. As adequate protection to the Secured Lenders for the use of any of their Cash Collateral, (a) the Debtor hereby waives any claim they may have pursuant to Bankruptcy Code § 552(b) and stipulate that any and all security interests and liens granted to the Secured Lenders prepetition, without altering the priority of those liens, in real or personal property of the Debtor and to the proceeds, products, offspring or profits thereof shall continue and attach as Continuing Liens to replace any Cash Collateral used pursuant to the terms hereof; provided however, that such Continuing Liens shall continue to be valid, perfected and enforceable without the necessity of further actions (including the filing of any notices with any governmental authority); provided, further, that (a) to the extent that the Court later finds that any measure of adequate protection provided herein in fact fails to adequately protect the Secured Lenders against a decrease in value of the Secured Lenders' interests in the Cash Collateral, the Secured Lenders shall have a section 507(b) superpriority administrative claim for such decrease; and (b) during the period from the date hereof until the effective date of any Court-approved plan of reorganization, the Debtor shall provide postpetition reportings and accountings to the Secured Lenders of the type received from the Debtor prior to the Petition Date and such other reports as may be reasonably requested by the Secured Lenders.

22. This Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the Continuing Liens upon the property of the estate of the Debtor granted to the Secured Lenders as they existed as of the Petition Date without the necessity of creating, filing, recording, or serving any financing statements or other documents

that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect such security interests and liens.

23. Nothing contained herein shall preclude the Secured Lenders or the Debtor from making appropriate application or request to the Court for such other relief as shall be necessary to adequately protect their respective interests.

24. IBC has not consented to any surcharge of operating costs, or costs or expenses of administration, that have been or may be incurred in the Debtor's Chapter 11 cases or in any subsequent Chapter 7 case of the Debtor or other related proceedings against IBC (or its claims or the Collateral) pursuant to section 506(c) of the Bankruptcy Code or otherwise, and notwithstanding the requirement herein that the Debtor comply with the Budget, nothing herein shall be construed to be an implied or express consent by IBC to a surcharge against IBC or its Collateral by the Debtor's estates or any of the Debtor's creditors or parties in interest in this case. In addition, notwithstanding the Court's approval of the Debtor's disbursements, including to other creditors, in accordance with the Budget, nothing herein shall be construed as a waiver of IBC's right to require the Debtor to avoid such payments to the extent that such amounts are recoverable under the Debtor's avoidance powers under Chapter 5 of the Bankruptcy Code or otherwise.

25. During the term of this Final Order, the Debtor (and/or any successor trustee) shall not, without the prior written consent of IBC (which consent may be granted or denied in the exercise of IBC's sole and absolute discretion) or absent prior Court approval upon prior notice to IBC:

> a. engage in any transaction that is not in the ordinary course of the Debtor's businesses or would require prior Court approval; or

  b. adversely deviate from the Budget in any material respect; or

  c. sell the assets of the Debtor.

26. During the term of this Final Order, absent prior Court approval, the Debtor shall not create, assume, or suffer any lien on or security interest in the Collateral, or any portion thereof, in favor of any person other than IBC.

27. The automatic stay arising under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit IBC, Van Hessen, T&S, and the Debtor to implement the provisions of this Final Order.

28. The Secured Lenders' continuing liens and superpriority administrative expense claims under 11 U.S.C. § 507(b), if any, granted hereunder, shall be subject only to, and only to the extent the Debtor does not have unencumbered cash to pay the fees and expenses of the Office of the United States Trustee and the Clerk of the United States Bankruptcy Court for the Southern District of Texas (collectively, the "Trustee Fees").

29. In the event of the occurrence of any of the following: (a) the Debtor's violation of any of the terms of this Final Order; (b) the termination of this Final Order; (c) the conversion of the Chapter 11 case of the Debtor to a case under Chapter 7 of the Bankruptcy Code; or (d) the dismissal of the Debtor's Chapter 11 case without the prior written consent of IBC, which consent shall be granted or denied in the exercise of IBC's sole and absolute discretion (and no such consent shall be inferred from any other action, inaction, or acquiescence by IBC) (any of the foregoing being referred to in this Final Order, individually, as an "Event of Default" and collectively, as "Events of Default"), then unless such Event of Default is specifically waived in writing by IBC (which waiver may be granted or denied in the exercise of IBC's sole and absolute discretion, and which waiver shall not be inferred from any action, inaction or

acquiescence by IBC), upon or after the occurrence of any of the foregoing, and at all times thereafter, after giving three (3) business days' notice of an Event of Default and demand for cure (but only the Events of Default covered under clause (a) above) served by overnight delivery service, email, or telecopy upon the Debtor, the Debtor's counsel, a trustee, if appointed, and the United States Trustee, the Debtor shall not use IBC's Cash Collateral without further order of the Court.

30. All Cash Collateral shall be deposited into one or more "Debtor in Possession" Cash Collateral accounts at Citibank. All such Cash Collateral accounts shall contain only Cash Collateral and shall not be commingled with any other funds. The Debtor is authorized and directed to maintain their cash management system in a manner reasonably acceptable to IBC and not inconsistent with this Final Order so long as such cash management system complies with section 345 of the Bankruptcy Code and the U.S. Trustee's guidelines regarding same.

31. The terms contained in this Final Order shall survive entry of any order that may be entered converting the Debtor's Chapter 11 case to a case under Chapter 7 or any order that may be entered confirming or consummating any plan of reorganization of the Debtor, and the term and provisions contained in this Final Order shall continue in these and any superseding cases under the Bankruptcy Code.

32. If an order is entered, whether <u>sua sponte</u> by the Court or otherwise, dismissing or converting the Debtor's Chapter 11 case, or if any or all of the provisions of this Final Order are hereafter modified, stayed or vacated, such order shall recognize that such modification, stay, dismissal or conversion shall not effect or diminish IBC's rights, priorities, or remedies hereunder.

33. Except as otherwise provided in this Order, the terms contained in this Final Order shall be valid and binding upon the Debtor, all creditors of the Debtor, and all other parties in interest from and after the date of the signing of this Final Order by this Court. In the event this Court modifies any of the terms or provisions contained in this Final Order such modifications shall not affect the rights and priorities of IBC pursuant to this Final Order before such modifications, and this Final Order shall remain in full force and effect.

34. The Debtor shall: (a) continue to keep the Collateral fully insured against all loss, peril and hazard; and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to such Collateral.

35. The Debtor is directed to keep its books and records of original entry current and updated so that all business activity is posted to them in the ordinary course of the Debtor's business.

36. Within 24 hours of entry of this Final Order, the Debtor shall provide, and shall continue to provide, to IBC and any professional retained by IBC, access (during normal business hours) to (i) the Debtor's premises and (ii) any and all books, records, documents and information relevant to the Debtor's business operations.

37. Notwithstanding anything contained in this Final Order or any prior interim order, no mechanic's lien, funds trapping claim, construction trust claim or any other claim of T&S and/or its subcontractors and suppliers shall be impaired, waived, relinquished, subordinated or otherwise prejudiced in any manner whatsoever, including without limitation, those mechanic's lien, funds trapping claims, construction trust fund claims, or other claims asserted or which could be asserted in (i) Adversary No. 10-03275 currently pending against the Debtor and IBC in this Court and/or (ii) R. B. Hash & Associates, Inc.'s trust fund claim, if any. All defenses,

objections, claims, offsets, objections to the claims and or any liens or trust claims of T&S and/or its subcontractors and suppliers and R. B. Hash & Associates, Inc. are reserved by Debtor, IBC and any other applicable party.

38. Unless explicitly provided herein, the Debtor, IBC, Van Hessen or Dutch American Finance, LLC, and T&S reserve all other claims, causes of actions, and defenses with respect to the extent, perfection, and priority of the asserted secured claims of IBC, Paul J.A. Van Hessen or Dutch American Finance, LLC, and T&S including disputes regarding perfection in the Debtor's M.U.D. Reimbursables.

39. Nothing in this Final Order shall preclude IBC from asserting its rights under the Bankruptcy Code or state law to protect its interests in the property of the Debtor's bankruptcy estate including its right to seek to lift the automatic stay under 11 U.S.C. § 362.

40. The Debtor's counsel shall serve a copy of this Final Order on the Service List approved by the Court. On or before August 20, 2010.

41. This Final Order shall be effective upon signature of the Court, without the necessity of entry into the docket sheet of these Cases.

42. This Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Final Order on the Court's docket in these Chapter 11 Cases.

43. This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Final Order and to adjudicate any and all disputes in connection therewith.

8-17-10



13

DATED: _____

_____
THE HONORABLE KAREN K. BROWN
UNITED STATES BANKRUPTCY COURT JUDGE
FOR THE SOUTHERN DISTRICT OF TEXAS

Agreed as to form and content:

**Spencer Crain Cubbage Healy & McNamara, pllc**

_/s/_____
Thomas H. Grace
Meagan Martin
1330 Post Oak Blvd., Suite 16000
Houston, Texas 77056
(713) 963-3669
(713) 963-4663 Fax
**Attorneys for Pearville, L.P.**


**Porter & Hedges, L.L.P.**

_/s/_____
John F. Higgins
Joshua N. Eppich
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6248 – Fax
**Attorneys for International Bank of Commerce**


**Adair & Myers, P.L.L.C.**

_/s/_____
Thomas W. Graves  _MARC DOUGLAS MYERS_
3120 Southwest Freeway, Suite 320
Houston, Texas 77098
(713) 568-1397

14

(713) 522-3322 Fax
**Attorney for Dutch American Finance, LLC
and J.A. Van Hessen**


**Krell & Torigian**

_____
John S. Torigian
1600 Smith Street
Suite 3885
Houston, Texas 77002
(713) 951-7603
(713) 951-7611 Fax
**Attorney for Tribble & Stephens Constructors, LTD**

**Pearville, LP**
**Projected Revenue & Expenses**
**09/01/10 - 9/31/10**

|  | Description | Amount |
|---|---|---:|
| | | **September 2010** |
| **Revenue** | | |
| Subway | Base Rent and CAM | $ 3,225 |
| Sprint | Base Rent and CAM | $ 8,613 |
| EyeStyles | Base Rent and CAM | $ 4,107 |
| 2-A-Day Sports Bar | Base Rent and CAM | $ 8,976 |
| Spec's | Base Rent and CAM | $ 17,079 |
| Vogue Nails & Spa | Base Rent and CAM | $ 2,979 |
| **Total Revenue** | | $ 44,979 |
| | | |
| **Expenses** | | |
| Bank Charges | | $ 100 |
| Firesafe Protection | Alarm | $ 135 |
| Property Maintenance | | $ 2,500 |
| StarTex Power (acct 73387) | Electricity | $ 2,400 |
| StarTex Power (acct 175605) | Electricity | $ 600 |
| AT&T (acct 713 987 5072 327 4) | phone lines | $ 130 |
| AT&T (acct 713 987 5205 333 2) | phone lines | $ 150 |
| City of Houston | Water | $ 150 |
| City of Houston | Water | $ 3,200 |
| City of Houston | Water | $ 150 |
| City of Houston | Water | $ 75 |
| City of Houston | Water | $ 75 |
| Valente Morales (employee) | payroll | $ 1,740 |
| IRS - payroll taxes | payroll taxes | $ 450 |
| Valente Morales (gas & exp) | maintenance | $ 600 |
| Premium Funding Associates | insurance | $ 2,495 |
| Waste Management | waste disposal | $ 2,200 |
| Management Fee | management fee | $ 3,300 |
| **Total Expenses** | | $ 20,450 |
| **Net** | | $ 24,529 |