**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
12/13/2010

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No.  10-34074 |
| PEARVILLE, L.P. | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## ORDER CONFIRMING THE PLAN PROPONENTS'
## SECOND AMENDED JOINT PLAN OF REORGANIZATION

On December 13, 2010, the Bankruptcy Court held a hearing (the "Confirmation Hearing") to consider confirmation of the Plan Proponents' Second Joint Amended Plan of Reorganization filed on November 23, 2010 (Docket No. 103) (referred to, along with all exhibits and attachments, as the "Plan") [1], as modified by the Non-Material Modification to the Plan Proponents' Second Amended Joint Plan of Reorganization filed by the Plan Proponents on December 10, 2010 (Docket No. 113) (referred to as the "Modification"). The Court, having considered the Plan, the Modification, the ballot tally, the evidence presented at the hearing; and all objections to the Plan having been resolved, withdrawn, overruled by the Court or cured by the terms of this Order; and the Court having made its findings of fact and conclusions of law, which findings and conclusions are incorporated by reference herein and set forth in part as follows:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### Background

On May 14, 2010 (the "Petition Date"), Pearville, L.P. (the "Debtor") commenced this case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

On July 21, 2010, the Plan Proponents filed: (i) their Plan of Reorganization (the "Original Plan"); and (ii) their Disclosure Statement (the "Original Disclosure Statement"). On September 28, 2010, the Plan Proponents withdrew the Original Plan and Original Disclosure Statement. On November 11, 2010, the Plan Proponents filed: (i) their First Amended Disclosure Statement (the "First Amended Disclosure Statement"); and (ii) their First Amended Plan of Reorganization (the "First Amended Plan"). On November 23, 2010, the Plan Proponents filed: (i) their Second Amended Disclosure Statement (the "Second Amended Disclosure Statement"); and (ii) their Second Amended Plan of Reorganization (the "Second Amended Plan").

On November 30, 2010, after proper notice and hearing as required by section 1125(b) of the Bankruptcy Code, this Court entered its Order: (i) Approving the Plan Proponents' Disclosure Statement; (ii) Setting Hearing to Consider Confirmation of the Plan Proponents' Plan of Reorganization; (iii) Scheduling Deadline for Submitting Ballots; and (iv) Establishing the Deadline for Filing Objections Thereto (the "Disclosure Statement Order") which, among other things, approved the Disclosure Statement, confirmed the Court's prior order authorizing the Plan Proponents to solicit votes with respect to the Plan, and set the deadline for voting to accept or reject the Plan at December 8, 2010.

### Jurisdiction and Venue

A.   Jurisdiction; Venue; Core Proceeding.   The Bankruptcy Court has jurisdiction over this case pursuant to 28 U.S.C. § 157 and 1334. Venue in the Bankruptcy Court is proper under 28 U.S.C. §§ 1408 and 1409. The Debtor was and is qualified to be a debtor under section 109 of the Bankruptcy Code. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(L).

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

B.     Retention of Jurisdiction.   The Court finds and concludes that the Court's retention of jurisdiction as set forth in Article VII, Section H of the Plan comports with 28 U.S.C. and 157.

### Notice, Solicitation, and Acceptance

C.     Service of Solicitation Materials and Notices.  In accordance with the Disclosure Statement Order and Bankruptcy Rule 3017(d), a copy of the order approving the Disclosure Statement, the Second Amended Disclosure Statement, the Second Amended Plan, and a ballot for solicitation of votes (the "Solicitation Package") were mailed to all creditors and parties in interest entitled to receipt of same in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the orders of this Court.

D.     Adequate Notice of Confirmation Hearing.  In accordance with Bankruptcy Rules 2002, 3018, 3019, 6006, and 9007, and the Disclosure Statement Order, adequate notice of the time for filing objections to confirmation of the Plan and the settlements contemplated thereby and adequate notice of the Confirmation Hearing was provided to all holder of Claims and Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules.  No other or further notice of the confirmation hearing of the Plan is necessary or required.

E.      Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record, the Plan Proponents have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and applicable non-bankruptcy law in connection with all of their respective activities relating to the solicitation of acceptances or rejections of the Plan and other activities contemplated under section 1125(e) of the Bankruptcy Code.  Votes for

acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Second Amended Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations. In addition, all procedures used to distribute the Solicitation Package to holders of Claims and Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations. Therefore, the Plan Proponents are entitled to the full protections afforded by section 1125(e) of the Bankruptcy Code.

## Compliance With Section 1129 of the Bankruptcy Code

F.     The Plan Proponents Have Satisfied Their Burden of Proof. A plan proponent has the burden to prove the requirements for confirmation by a preponderance of the evidence. *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters., Ltd. III)*, 994 F.2d 1160, 1163-65 (5th Cir. 1993). The Plan Proponents have satisfied their burden of proof with respect to confirmation of the Plan.

G.     Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code. The Plan is in compliance with section 1122 of the Bankruptcy Code, as all Claims and Interests within each Class under the Plan are substantially similar and are afforded equal and reasonable treatment, or the claimant has agreed to the classification. Accordingly, the classification of Claims and Interests under the Plan satisfies the requirements of section 1122 of the Bankruptcy Code. The Plan is also in accordance with section 1123(a) of the Bankruptcy Code, as the Plan: (i) designates classes of Claims and

Interests, other than Claims of a kind specified in sections 507(a)(2), 507(a)(3), or 507(a)(8); (ii) specifies classes of Claims and Interests that are not Impaired under the Plan; (iii) specifies the treatment of classes of Claims and Interests that are Impaired under the Plan; (iv) provides the same treatment for each Claim or Interest of a particular Class, unless the holder of a particular Claim or Interest agrees to less favorable treatment of their respective Claim or Interest; (v) provides for adequate means of implementation; and (vi) contains only provisions that are consistent with the interests of holders of Claims and Interests. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Plan Proponents' estates. Therefore, the Plan satisfies the requirements of sections 1123(a) and (b) of the Bankruptcy Code.

H.  Plan Proponents' Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2)). In accordance with section 1129(a)(2) of the Bankruptcy Code, the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code. The Debtor is a proper debtor under section 109 of the Bankruptcy Code. The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code (including sections 1122, 1123, 1124, 1125, 1126, and 1128), the Bankruptcy Rules (including Bankruptcy Rules 3017, 3018, and 3019), and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the ballots, and all related documents and notices, and in soliciting and tabulating votes on the Plan.

I.  Votes to accept or reject the Plan were solicited by the Plan Proponents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code. The Plan Proponents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith in a manner consistent with the applicable provisions of the Disclosure Statement Order, the

Court's November 19, 2010 Order, the Second Amended Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable laws, rules, and regulations, and are entitled to the protections offered by section 1125(e) of the Bankruptcy Code.

J.      The Plan Proponents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan of distributions made pursuant to the Plan, so long as such distributions are made consistent with the Plan.

K.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan is proposed in good faith and not by any means forbidden by law.  The Debtor filed this case with the legitimate and honest purpose of developing an orderly process to compensate legitimate claimants while preserving the Debtor's business and maximizing value.  The Plan culminates a six month long reorganization process during which the Plan Proponents consistently have engaged in arm's-length negotiations among entities having very different and, in many instances, competing interests, all aimed at an overarching goal of maximizing the value of the Debtor's assets and the recovery to holders of Claims and Interests in accordance with the Bankruptcy Code.  All transactions contemplated by the Plan were negotiated and consummated at arm's-length, without collusion, and in good faith.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formation of the Plan and the solicitation of votes to accept or reject the Plan.  Accordingly, the Plan is proposed is in good faith and not by any means forbidden by law in accordance with section 1129(a)(3) of the Bankruptcy Code.

L.      Payment for Services of Costs and Expenses (11 U.S.C. § 1129(a)(4)).    In accordance with section 1129(a)(4) of the Bankruptcy Code, all payments and distributions made under the Plan for services or for costs and expenses in, or in connection with, these cases, or in connection with the Plan and incident to these cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.

M.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).   The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy Code.   The Persons that must be identified pursuant to section 1129(a)(5) have been identified in the Disclosure Statement and the Plan. These provisions of the Plan are consistent with the interests of Claim and Interest holders and with public policy.

N.      No Rate Changes (11 U.S.C. § 1129(a)(6)).   In accordance with section 1129(a)(6) of the Bankruptcy Code, the Plan Proponents are not subject to any governmental regulation of any rates.

O.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).   The testimony, liquidation analysis, and other evidence presented at the Confirmation Hearing establishes that the requirements of Bankruptcy Code section 1129(a)(7) have been satisfied, as each impaired holder of a Claim or Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Plan Proponents were liquidated under chapter 7 of the Bankruptcy Code on such date.

P.      Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8)).   As set forth in the Declaration of Ella Goettle, the percentages of Holders of Claims entitled to vote that voted to accept the Plan are as follows:

| CLASS | TOTAL NUMBER OF VALID BALLOTS RECEIVED: 8 | | | |
|---|---|---|---|---|
| | ACCEPT THE PLAN | | REJECT THE PLAN | |
| | Dollar Amount Voted/ Percentage of Total Dollar Amount | Number of Votes/ Percentage of Number of Votes | Dollar Amount Voted/ Percentage of Total Dollar Amount | Number of Votes/ Percentage of Number of Votes |
| 1 | $7,776,000.00 100% | 1 100% | $0.0 | 0 0% |
| 2 | $550,804.14 100% | 1 100% | $0.0 | 0 0% |
| 3 | $356,028.03 100% | 5 100% | $0.0 | 0 0% |
| 4 | $3,848,125.94 100% | 1 100% | $0.0 | 0 0% |

Accordingly, while Classes 1, 2, 3and 4 are Impaired such classes have accepted the Plan in accordance with section 1126(c) of the Bankruptcy Code. Class 5 (Partnership Interests) is also Impaired and was deemed to reject the Plan under 11 U.S.C. § 1126(g) because holders of Class 5 Interests surrender their Partnership Interests under the Plan.

Q.      Treatment of Administrative, Priority, and Tax Claims (11 U.S.C. § 1129(a)(9)). The Plan's treatment of Claims of a kind specified in sections 507(a)(1) through (8) satisfies the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

R.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).   The evidence establishes that Impaired Classes 1, 2, 3, and 4 voted to accept the Plan.  In accordance with section 1129(a)(10) of the Bankruptcy Code, at least one Class of Claims that is Impaired under the Plan has voted to accept the Plan, not including acceptances by any insider.

S.      Feasibility (11 U.S.C. § 1129(a)(11)). The evidence proffered or adduced at the confirmation hearing with respect to feasibility: (i) is persuasive, credible, and accurate as of the dates such analysis was prepared, presented, or proffered; (ii) utilizes reasonable and appropriate

methodologies and assumptions; (iii) has not been controverted by other evidence; (iv) establishes that confirmation of the Plan is not likely to be followed by the need for further financial reorganization or liquidation of the Debtor; and (v) establishes that the Plan Proponents will have sufficient funds available to meet their obligations under the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

T.     Payment of Fees (11 U.S.C. § 1129(a)(12)). To the extent that fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date.

U.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Court finds and concludes that provisions of Bankruptcy Code § 1129(a)(13) are not applicable to this Debtor or this Plan.

V.     Other Provisions of 11 U.S.C. § 1129(a). The Court finds and concludes that the provisions of 11 U.S.C. §§ 1129(a)(13), (a)(14), (a)(15), and (a)(16) are not applicable to the Plan Proponents or this Plan.

W.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). The Bankruptcy Court finds and concludes that no negative votes were cast as to the Plan. Class 5 is an Impaired Class of Interests that is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. At the Confirmation Hearing, the Plan Proponents presented uncontroverted evidence that the Plan does not discriminate unfairly and is fair and equitable with respect to Class 5 as required by Bankruptcy Code § 1129(b)(1) and (2). Therefore the Plan may be confirmed notwithstanding the Plan Proponents' failure to satisfy Bankruptcy Code § 1129(a)(8) with respect to Class 5. Upon Confirmation and the occurrence of the Effective Date,

the Plan shall be binding upon the members of all Classes of Claims and Interests, including, but not limited to, Class 5.

X.      Only One Plan – 11 U.S.C. § 1129(c).  Other than the Plan, no other plan has been filed in these cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

Y.      Principal Purpose – 11 U.S.C. § 1129(d).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

Z.      Compliance With Bankruptcy Rule 3016.  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and the Plan Proponents are appropriately identified as the proponents of the Plan.  The filing of the Disclosure Statement with the clerk satisfies Bankruptcy Rule 3016(b).

AA.     Burden of Proof.  The Bankruptcy Court finds and concludes that the Plan Proponents have met their burden of proving the elements of Bankruptcy Code §§ 1129(a) and (b), and that the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code § 1129.

## Modifications to the Plan

BB.     Approval of Plan Modification.  The Modification does not materially and adversely affect or change the treatment of any Claims or Interests.  The Modification complies with section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and all other provisions of the Bankruptcy Code including, without limitation, sections 1122 and 1123, and does not require additional disclosure under section 1125 or the resolicitation of ballots under section 1126, nor do they require that holders of Claims or Interests be afforded an opportunity to change

previously cast votes.  Disclosure of the Modification constitutes due and sufficient notice thereof under the circumstances of these cases.  Accordingly, the Plan, as amended by the Modification, is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to the Modification shall be binding and shall be deemed to be cast with respect to the Plan as modified by the Modification pursuant to section 1127(d) of the Bankruptcy Code and Bankruptcy Rule 3019.

### Transactions Pursuant to the Plan

CC.    Settlements.  The Plan, incorporated herein and attached hereto as **EXHIBIT**, incorporates the IBC Settlement and the Term Sheet, a copy of which is attached as Exhibit A of the Plan.  This Order constitutes the Court's approval of the IBC Settlement.  The Bankruptcy Court finds and concludes, based upon the uncontroverted evidence and testimony presented at the Confirmation Hearing that the settlements and compromises contained in the Plan, including, but not limited to, the releases contemplated by the IBC Settlement and Article V, Section A of the Plan constitute good faith compromises and settlements of all claims, whether arising pre- or postpetition against the Plan Proponents.  Such compromises and settlements are (a) made in exchange for adequate consideration and are in the best interests of the Debtor's creditors, (b) within the range of possible litigation outcomes, (c) fair, equitable, reasonable, and (d) integral elements of the restructuring and resolution of this Chapter 11 case in accordance with the Plan. Accordingly, pursuant to Bankruptcy Rule 9019, the provisions of the Plan shall constitute a good faith compromise and settlement of the claims, causes of action, and controversies addressed in the IBC Settlement. The entry of this Confirmation Order shall constitute: (i) the Bankruptcy Court's approval of IBC Settlement, and (ii) the Bankruptcy Court's finding that the

IBC Settlement is in the best interest of the Debtor, its estate, its creditors and is fair, equitable, and reasonable.

DD.    Injunctions/Releases.  The injunction and release provisions of the Plan are an integral part of the Plan and represent a valid exercise of the Plan Proponents' business judgment.  Pursuing any such claims against parties to whom an injunction or release applies is not in the best interest of the Debtor's estate and various constituencies.  The failure to affect the injunction and release provisions of the Plan would impair the Plan Proponents' ability to confirm the Plan, and the injunction and release provisions of the Plan are fair, equitable, and reasonable.    Accordingly, the injunction and release provisions described in the Plan are approved.

EE.    Assumption of Executory Contracts and Unexpired Leases.  The assumption and rejection of executory contracts and unexpired leases as provided by the Plan and specifically listed on Exhibit B of the Plan are reasonable exercises of the Plan Proponents' business judgment and are in the best interests of the Debtor and its estate.  The Reorganized Debtor has determined to assume the Lease between Pearville, L.P., as landlord, and SprintCom, Inc. ("Sprint"), as tenant (the "Lease"). In addition, Sprint has an allowed secured mechanics lien claim, as the assignee of the mechanics lien originally filed by Elder-Jones, Inc. Nothing in the Confirmation Order or the Plan shall impair the validity of Sprint's mechanics lien, and Sprint may continue to recoup its secured claim, as provided under the Lease, from the rent otherwise payable, until the full amount of Sprint's secured claim ($81,384.19 as of the Confirmation Date) is cured and satisfied, at which time the mechanics lien shall be released.

FF.    Plan Documents Valid and Binding.  All other documents reasonably necessary to implement the Plan have been negotiated in good faith and at arm's length and shall be, upon

execution on or after the Effective Date, valid, binding, and enforceable agreements, and are in the best interests of the Debtor and its estate.

## ORDER

Based on the foregoing findings of facts and conclusions of law, it is hereby ORDERED that:

1.     Confirmation of Plan.  The Plan as amended by the Modification (hereinafter referred to as the "Confirmed Plan") is **APPROVED** and **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code.  Except as otherwise set forth in this Confirmation Order, the Confirmed Plan is valid and enforceable pursuant to its terms, and the terms of the Confirmed Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2.     Objections Overruled.  All objections that have not been withdrawn, waived, or settled are **OVERRULED.**

3.     Approval of IBC Settlement.  The IBC Settlement is hereby approved in its entirety pursuant to section 9019 of the Bankruptcy Code.

4.     Approval of Assumed Executory Contracts and Leases.  The assumption and rejection of executory contracts and unexpired leases as provided by the Plan and specifically listed on Exhibit B of the Plan are reasonable exercises of the Plan Proponents' business judgment and are in the best interests of the Debtor and its estate.  To the extent an executory contract or unexpired lease is not specifically listed on Exhibit B of the Plan it is deemed rejected by the Debtor.

5.     Authority.  The Plan Proponents are authorized and empowered to take such actions and do all things as may be necessary or required to implement and effectuate the Plan and this Confirmation Order.  The Plan Proponents are further authorized, empowered and ordered to carry out and effectuate all of the provisions of the Plan and IBC Settlement, to issue,

execute, deliver, file, and record, as appropriate, any instrument, or perform any act necessary to implement, effectuate, or consummate the Confirmed Plan and this Confirmation Order, and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents (collectively, the "Documents"), and to perform such other acts and execute and deliver such other Documents as are required by, consistent with and necessary or appropriate to implement, effectuate, or consummate the Confirmed Plan and this Confirmation Order and the transactions contemplated thereby, all without the requirement of further application to, or order of, the Bankruptcy Court.

6.      Plan Classification Controlling.  The terms of the Confirmed Plan shall govern the classification of Claims and Interest for purposes of the distributions to be made thereunder.

7.      Surrender of Class 5 Partnership Interests.  On the Effective Date, the Partnership Interests shall be deemed surrendered to the Reorganized Debtor without need of any further action or documentation by the holders of Class 5 Partnership Interests.  LVH Pearville, LLC shall receive 100% of the equity interest in the Reorganized Debtor.

8.      Preservation of Causes of Action.  The provisions of Article VII, Section M of the Confirmed Plan are hereby approved in their entirety.  The Plan Proponents expressly reserve all rights to prosecute any and all of their respective Causes of Action against any Person except as otherwise expressly provided in the Confirmed Plan or the IBC Settlement.

9.      2009 and 2010 Ad Valorem Property Taxes:    In the event the Reorganized Debtor fails to timely make its required Plan payments to "Harris County et al" (as that term is used in the Proof of Claim filed by Harris County et al), or fails to pay post-petition ad valorem property taxes owed to Harris County prior to delinquency, either of which shall constitute an

event of default under the Plan as to Harris County, it shall send notice of such default to the Reorganized Debtor. If the default is not cured within twenty (20) days of the date of such notice, Harris County may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. Harris County is only required to send two (2) written notices of default and upon the third event of default, Harris County may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

10.     Injunctions, Exculpations, and Releases.     The discharge, injunctions, moratoriums, exculpations, limitations of liabilities, and releases as set forth in the Confirmed Plan are approved and authorized in their entirety.

11.     Effective Date. The Plan shall become effective on the date of this Confirmation Order without need to wait for the fourteen days for a party to file a notice of appeal under Rule 8002 of the Federal Rules of Bankruptcy Procedure. The automatic stay provided for in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure is waived for good cause shown.

12.     Notice of Effective Date. On or before five business days after the occurrence of the Effective Date, the Plan Proponents shall mail to all holders of Claims which are not Disallowed, a notice that informs such Persons of: (i) the entry of the Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) such other matters as may be ordered by the Bankruptcy Court.

13.     Waiver of Estoppel. Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Plan Proponents or their counsel, or any other Person, if

such agreement was not disclosed in the Confirmed Plan, the Disclosure Statement, or papers filed with this Court prior to the confirmation hearing.

14.     <u>References to Plan Provisions</u>.  The failure to specifically include or reference any particular provision of the Confirmed Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.

15.     <u>Conflicts Between Confirmed Plan and Confirmation Order</u>.  If there is any conflict between the Confirmed Plan and this Confirmation Order, the terms of this Confirmation Order shall control except to the extent that there is a conflict between the terms of this Confirmation Order and the terms of the IBC Settlement in which case the terms of the IBC Settlement shall control.

16.     <u>Severability of Plan Provisions</u>.  Each term and provision of the Confirmed Plan, as it may be altered or interpreted, is valid and enforceable pursuant to its terms.

17.     <u>Retention of Jurisdiction</u>.  This Bankruptcy Court's retention of jurisdiction as set forth in Article VII, Section H of the Confirmed Plan is approved.  Such retention of jurisdiction does not affect the finality of this Confirmation Order.  For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over all pending matters, including adversary proceedings.

18.     <u>Administrative Claims Bar Date</u>.  In accordance with Article IV of the Plan, any party seeking an Administrative Claim (other than professional fee claims) must submit proof of such Administrative Claim on or before thirty (30) days after the Effective Date.  Any party failing to submit such proof within such time period shall be forever barred and stopped from asserting such Administrative Claim.

19.     <u>Professional Fee Applications.</u>     Unless authorized by separate order of the

Bankruptcy Court, ~~pursuant to section ____ of the Plan~~, Professionals must file an application for

allowance of Professional fees for services rendered prior to the Effective Date no later than

thirty (30) days after the Effective Date.

Signed this _13_ day of _Dec_, 2010

                    THE HONORABLE KAREN K. BROWN
                    UNITED STATES BANKRUPTCY COURT JUDGE
                    FOR THE SOUTHERN DISTRICT OF TEXAS

# EXHIBIT

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No.  10-34074 |
| PEARVILLE, L.P. | § | |
| | § | Chapter 11 |
| Debtor. | § | |

THE DEBTOR AND LVH PEARVILLE LLC'S
SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
AS MODIFIED ON: DECEMBER 10, 2010

Pearville, L.P., referred to as the "Debtor", the debtor and debtor in possession in this

bankruptcy case under chapter 11 of the Bankruptcy Code, and LVH Pearville LLC (together,

the "Plan Proponents") jointly propose this Plan of Reorganization ("Plan") for the resolution of

all outstanding creditor Claims and Partnership Interests.  Reference is made to the Disclosure

Statement filed by the Debtor and LVH Pearville LLC (the "Disclosure Statement") for a

discussion of the Debtor's history and results of operations.  All creditors and interest holders are

encouraged to review the Disclosure Statement prior to voting on the Plan.

ARTICLE I.

DEFINITIONS AND RULES OF CONSTRUCTION

A.      Definitions.

In addition to such other terms as are defined in other Sections of this Plan, the following

terms (which appear in the Plan as capitalized terms) have the following meanings as used in the

Plan.

1.      "Administrative Claim" means a claim for costs and expenses of administration

of the Reorganization Case under section 503(b) of the Bankruptcy Code entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code.

2.     **"Allowed Administrative Claim"** means all or that portion of an Administrative Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

3.     **"Allowed Claim"** or **"Allowed Interest"** means, respectively, except as otherwise allowed or provided for in the Plan or a Final Order of the Bankruptcy Court, a Claim or a Partnership Interest, proof of which was timely and properly Filed or, if no proof of claim or proof of interest was Filed, which has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which:

> (a) no objection to the allowance thereof has been interposed on or before the later of:
>
> (i) the ninety  (90) day after the Effective Date, or (ii) such other applicable period for objection as may be fixed or extended by the Court, or
>
> (b) any objection thereto has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

Unless otherwise specified herein or by order of the Court, an "Allowed Claim" shall not include any interest, fees, costs or other charges on such Claim accruing after the Petition Date.

4.     **"Allowed Priority Tax Claim"** means all or that portion of a Priority Tax Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

5.     **"Avoidance Actions"** means all of the Debtor's and the Estate's rights and claims under sections 541 through 553 of the Bankruptcy Code, inclusive, or under any similar or related state or federal statute or common law, whether or not an action is initiated on or before the Effective Date.

6.     **"Ballot"** means the form to be distributed with the Disclosure Statement to each

holder of an Impaired Claim or Partnership Interest on which the holder is to indicate acceptance or rejection of the Plan.

7. **"Balloting Deadline"** means the date and time, as set by an Order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots must be received at the address set forth used for voting on the Plan, as such date may be extended by an order.

8. **"Bankruptcy Code"** means Title 11 of the United States Code, or the Bankruptcy Reform Act of 1978, as amended.

9. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Texas (Houston Division), or, in the event such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Southern District of Texas.

10. **"Bankruptcy Rules"** means collectively, the (a) Federal Rules of Bankruptcy Procedure, (b) Federal Rules of Civil Procedure and, (c) Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case or proceedings therein, as the case may be.

11. **"Business Day"** means any day other than a Saturday, Sunday or Federal holiday in the United States.

12. **"Cash"** means cash or cash equivalents.

13. **"Causes of Action"** means, without limitation, any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, debts, sums of money, damages, judgments, claims and demands, actions, defenses, offsets, powers (including all police,

regulatory, and enforcement powers and actions that may be taken), privileges, licenses, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whatsoever, whether known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or tort, in law, equity or otherwise, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable. For avoidance of doubt, Causes of Action include, but are in no way limited to (a) damages, (b) the recovery of monies, (c) lien avoidance, subordination, surcharge, recharacterization, rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (d) tax refunds, (e) injunctive, equitable, or other relief, (f) claims pursuant to Section 362 of the Bankruptcy Code, (g) such claims and defenses as fraud, mistake, duress, and usury, (h) Avoidance Claims, and (i) all causes of action that may be directly or derivatively asserted on behalf of the Debtor, its Estate, or the Reorganized Debtor.

14.     **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

15.     **"Class"** means a category of holders of Claims or Partnership Interests classified together pursuant to section 1123(a)(11) of the Bankruptcy Code.

16.     **"Class 1 Claim Note"** shall mean the note created by operation of the Plan in satisfaction of the Class 1 Claim.

17.     **"Class 4 Claim Note"** shall mean the note created by operation of the Plan in satisfaction of the Class 4 Claim.

18.     **"Class 3 Claim Consideration"** shall mean $50,000 contributed to the Debtor by LVH Pearville as part of the Exit Financing.

4

19.     **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

20.     **"Confirmation Hearing"** means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of the Plan, including any continuances thereof.

21.     **"Confirmation Order"** means the order of the Bankruptcy Court entered following the Confirmation Hearing that confirms the Plan.

22.     **"Consolidated Van Hessen Claim"** shall mean the Van Hessen Claim and two claims in which Van Hessen has taken an assignment: (i) the IBC Deficiency Claim and (ii) the T&S Claim.

23.     **"Debtor"** means Pearville, L.P.

24.     **"Debtor in Possession"** means the Debtor between the Petition Date and the Effective Date.

25.     **"Debtor's Cash"** means (1) the Cash held by the Debtor on the Effective Date; and  (2) any Cash or any cash collateral owned by or in which the Debtor has an interest under Section 541 of the Bankruptcy Code.

26.     **"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but

5

no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court
pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise
deemed timely filed under applicable law.

27.     **"Disallowed Interest"** means a Partnership Interest or any portion thereof that
has been disallowed by a Final Order or a settlement.

28.     **"Disclosure Statement"** means the Joint Disclosure Statement of the Debtor and
LVH Pearville LLC, as modified or amended, filed with and approved by the Bankruptcy Court
on **November 30, 2010.**

29.     **"Disputed Claim"** or **"Disputed Interest",** mean any Claim or Partnership
Interest, that is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest nor a
Disallowed Interest, as the case may be.  In the event that any part of a Claim or Interest is
disputed, such Claim or Interest in its entirety shall be deemed to constitute a Disputed Claim or
Disputed Interest for purposes of distribution under the Plan unless a Final Order has been
entered providing otherwise. Without limiting any of the foregoing, a Claim or Interest that is the
subject of a pending objection, motion, complaint, counterclaim, setoff, Avoidance Claims,
litigation claim or other defense, or any other proceeding seeking to disallow, subordinate or
estimate such Claim, shall be deemed to constitute a Disputed Claim or Disputed Interest, as the
case may be.

30.     **"Effective Date"** shall be the date of the Confirmation Order.

31.     **"Estate"** means the estate created in the Reorganization Case under section 541
of the Bankruptcy Code.

32.     **"Executory Contracts"** means the executory contracts and leases assumed by the
Reorganized Debtor pursuant to section 365 of the Bankruptcy Code and more further described

in **EXHIBIT B** of this Plan.

33.     **"Exit Financing"** means the funds to be contributed to the Debtor by LVH Pearville on or before the Effective Date.

34.     **"File"** or **"Filed"** means filed with the Bankruptcy Court in the Reorganization Case, as reflected on the official docket of the Bankruptcy Court for the Reorganization Case.

35.     **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for reargument or rehearing pending; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule of the Bankruptcy Rules, may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

36.     **"Impaired"** means a Claim or Interest or a Class of Claims or a Class of Interests that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

37.     **"Interest"** means the holder of any current or former holder of an "equity security" (as defined in Section 101(16) of the Bankruptcy Code), and includes all Partnership

7

Interests.

38.     **"International Bank of Commerce"** or **"IBC"** means the International Bank of Commerce and any affiliates, successors or assigns thereof.

39.     **"IBC $8.4 Million Note"** means a certain Real Estate Lien Note executed by the Debtor payable to the order of IBC dated September 6, 2006 in the original amount of $8,400,000.00 as the same may have been amended, renewed, or rearranged from time to time.

40.     **"IBC $7.6 Million Note"** means a certain Real Estate Lien Note executed by the Debtor payable to the order of IBC dated August 17, 2004 in the original amount of $7,600,000.00 as the same may have been amended, renewed, or rearranged from time to time.

41.     **"IBC Claim"** means all claims of IBC evidenced by, arising under or relating to the IBC Loan Documents, including but not limited to claims arising from the IBC $8.4 Million Note and the IBC $7.6 Million Note.

42.     **"IBC Collateral"** means any of the Debtor's assets, including the Debtor's Cash and Property, in which IBC has a senior valid, perfected security interest.  As part of the IBC Settlement, the parties acknowledged and confirmed that the PAD Sites are not included in the IBC Collateral securing the IBC $8.4 Million Note.

43.     **"IBC Loan Documents"** means all documents evidencing the IBC $8.4 Million Note and the IBC $7.6 Million Note.

44.     **"IBC Deficiency Claim"** means the portion of the IBC Claim (if any) that exceeds the principal value of the Class 1 Claim Note.

45.     **"IBC Settlement"** means the settlement and note purchase agreement made by and among the Debtor, IBC, Van Hessen and LVH Pearville dated November 9, 2010.  A true and correct copy of the terms of the IBC Settlement are located at **EXHIBIT A** of this Plan.

8

46.    "**IBC Settlement Payments**" are the payments by Van Hessen to IBC under the terms of the IBC Settlement, including the "Settlement Payment" and "Note Purchase Consideration" as those terms are defined in the Term Sheet.

47.    "**LVH Pearville**" means LVH Pearville, LLC, a Plan Proponent and the party providing the Exit Financing funds that will be used to pay the Class 2, 3, and 4 obligations pursuant to the terms of the Plan.

48.    "**Materialmens Lien Holders**" means any creditor of the Debtor's Estate that (i) furnished construction services and/or materials for the construction of the Debtor's Property; and (ii) has asserted a materialmens or mechanics lien on the Debtor's Property. Materialmens Lien Holders include both senior contractors and their subcontractors.

49.    "**MUD-381**" means the Harris County Municipal Utilities District No. 381.

50.    "**MUD-381 Tranche One Reimbursement**" means the first reimbursement payment that the Reorganized Debtor expects to receive from the MUD-381.

51.    "**MUD-381 Tranche One Reimbursement Payment Date**" means date on which the Reorganized Debtor receives the MUD-381 Tranche One Reimbursement.

52.    "**New York Prime Rate**" means the annual lending rate of interest announced from time to time by JP Morgan Chase & Co, New York, New York, as its prime rate.

53.    "**Partners**" mean collectively the Partners of the Debtor.

54.    "**Partnership Interests**" means the respective legal, equitable, contractual and other rights and ownership interests of the Partners in and with respect to the Debtor.

55.    "**Peltier**" means Peltier Brothers Construction LP, a creditor of the Debtor.

56.    "**Petition Date**" means May 14, 2010.

57.    "**Plan**" means this plan of reorganization, either in its present form or as it may be

9

altered, amended, or modified from time to time by the Debtor or the Reorganized Debtor in accordance with the Bankruptcy Code and Bankruptcy Rules.

58.     **"Priority Tax Claim"** shall mean any Claim that is due on an accrual basis through the petition date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

59.     **"Property"** means the land, buildings, improvements and equipment located at 10555 Pearland Parkway, Houston, Texas 77089 and the Debtor's Cash.

60.     **"Reorganization Case"** means this bankruptcy case under chapter 11 of the Bankruptcy Code.

61.     **"Reorganized Debtor"** means the Debtor, as revested with property of the Estate to the extent provided in this Plan, on or after the Effective Date.

62.     **"Retained Causes of Action"** means any and all claims, Causes of Action, demands, defenses, suits, judgments, choses in action, licenses, privileges, agreements, and all other rights and remedies (legal or equitable) of the Debtor and the Estate, for or on behalf of Creditors and/or the Debtor and/or the Estate, including but not limited to any and all claims and/or Causes of Action by the Estate and/or the Debtor, against any and all Creditors, Governmental Units, or other Persons, of every kind or nature, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured, whether arising before, on or after the Petition Date, in contract or in tort, at law or in equity, and whether or not brought as of the Effective Date, including but not limited to those for (i) damages, (ii) the recovery of monies, (iii) lien avoidance, subordination, surcharge, recharacterization, setoff, counterclaim, contribution or recoupment, (iv) tax refunds, (v) claims and defenses such as fraud, mistake, duress and usury, (vi) claims on contracts or for breaches of duties imposed by

10

law, (vii) injunctive, equitable or other relief, (viii) claims and Causes of Action that may be asserted derivatively on behalf of the Debtor, the Estate, or the Reorganized Debtor, (ix) claims and Causes of Action pursuant to section 362 of the Bankruptcy Code, and (x) all Avoidance Actions.

63.   **"Scheduled"** means the claims set forth, stated or listed on the Schedules.

64.   **"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders Filed by the Debtor under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

65.   **"Secured Claim"** shall mean a claim by a creditor possessing a valid and perfected security interest as such term is defined in the Bankruptcy Code.

66.   **"Tenant Leases"** means leases between the Debtor and its tenants which are subject to assumption pursuant to 11 USC §365.

67.   **"Term Sheet"** means the settlement and note purchase agreement terms made by and among the Debtor, IBC, Van Hessen and LVH Pearville dated November 9, 2010.  A true and correct copy of the Term Sheet is located at **EXHIBIT A** of this Plan.  With regard to the IBC Settlement, if there is any inconsistency between the Term Sheet and the Plan, the Term Sheet controls.

68.   **"Troy Construction"** means Troy Construction LLC, a creditor of the Debtor.

69.   **"T&S"** means Tribble & Stephens Constructors, Ltd., a creditor of the Debtor.

70.   **"T&S Claim"** means the Claim of T&S.

71.   **"T&S Litigation"** means the certain lawsuit captioned *Tribble & Stephens Constructors, Ltd. v. International Bank of Commerce & Pearville, LP*, originally filed in the 80th Judicial District of Texas, Cause No. 2009-51129, and removed to the Bankruptcy Court as

11

Adversary Proceeding No. 10-03275.

72.   **"Unsecured Claim"** means any claim that is not an Administrative Claim, Priority Claim, Secured Claim, or a Claim otherwise specifically classified in another class in this Plan.

73.   **"Van Hessen"** means Paul J.A. "Lex" Van Hessen and any affiliates, successors, or assigns thereof.

74.   **"Van Hessen Claim"** means all claims of Van Hessen evidenced by, arising under, or relating to the Van Hessen Loan Documents.

75.   **"Van Hessen Loan Documents"** means all documents evidencing Van Hessen's loans to the Debtor.

**B.     Rules of Interpretation.**

Any term used in this Plan that is not defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**C.     Rules of Construction.**

For purposes of this Plan:

1.   Whenever from the context it is appropriate, each term whether stated in the singular or the plural shall include both the singular and the plural;

2.   Unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan;

3.   The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only a particular portion of the Plan;

12