4.      Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

5.      All Exhibits to this Plan are incorporated herein;

6.      The rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and

7.      As to the timing of any required under this Plan, the phrase "on the Effective Date" shall mean "on the Effective Date, or as soon as reasonably practicable thereafter", and the phrase "on or before the Effective Date" shall mean "on or before the Effective Date, or as soon as reasonably practicable thereafter."

**D.      Time Periods.**

In computing any time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

In addition to the unclassified Allowed Administrative Expense Claims and the Allowed Priority Tax Claims, the Plan has four Classes of Claims and one Class of Interests designated as follows:

- *Class 1: Secured Portion of IBC $8.4 Million Note*.  This Class consists of the Allowed Secured Claim of the holder of the IBC $8.4 Million Note.

- *Class 2: IBC $7.6 Million Note*.  This Class consists of the Allowed Claim of IBC based upon the IBC $7.6 Million Note.  It is anticipated that this note shall be assigned to LVH Pearville, LLC prior to the Confirmation Date.

13

- *Class 3: General Unsecured*.  This Class consists of Allowed Unsecured Claims which are not entitled to priority under section 507(a) of the Bankruptcy Code.

- *Class 4: Consolidated Van Hessen Claim*.  This Class consists of the Van Hessen Claim, and the two claims in which Van Hessen has taken an assignment: (i) the IBC Deficiency Claim and (ii) the T&S Claim.

- *Class 5: Partnership Interests*.  The Class consists of the partnership interests of the Debtor.

### ARTICLE III. TREATMENT OF CLAIMS AND INTERESTS

The Plan contemplates that LVH Pearville shall provide the Exit Financing to the Debtor on the Effective Date in an amount sufficient to (i) provide additional operating capital for the Reorganized Debtor; (ii) fund the cure payments for executory contracts and leases to be assumed by the Reorganized Debtor; and (iii) fund the payments to the following Allowed Claims:   Administrative Expense Claims, Priority Tax Claims, and Class 3 Claims.   The proposed payments for the Class 1 and 3 Claims shall be paid by the Reorganized Debtor pursuant to the terms described herein.   In exchange for providing the Exit Financing, LVH Pearville, LLC, shall receive (i) 100% of the equity interest in the Reorganized Debtor; and (ii) a lien on all of the Reorganized Debtor's assets to secure the amount of the Exit Financing as well as any future cash infusions necessary to fund cash flow deficiencies until the project is able to generate a positive cash flow.   On the Effective Date, the Debtor, now a limited partnership, shall be converted to a limited liability company.   Reuven M. Bisk shall serve as the initial manager of LVH Pearville, LLC and the Reorganized Debtor once it has been converted to a limited liability company.

**A.      Class 1 – Secured Portion of IBC $8.4 Million Note**

14

The holder of the Class 1 Claim is entitled to vote.  The Class 1 Claim shall be satisfied in the following manner:

      i. *Capitalization*.  On the Effective Date, the Class 1 Claim shall be capitalized as the Class 1 Claim Note with a principal amount of $7,776,000.00.

      ii. *Interest Rate*.  The Class 1 Claim Note shall bear interest at the New York Prime Rate plus 1.50% with a floor of 5.75% per annum.

      iii. *Term and Amortization*.  Payments of interest only shall be made in equal payments commencing on January 31, 2011 for a period of 12 months. The Class 1 Claim Note shall be paid in full on January 31, 2012.

      iv. *Collateral*.  The holder of the Class 1 Claim Note shall retain all of the lien and security interests in the IBC Collateral, with the same priority that existed on the Petition Date.

**B.**    **Class 2 – IBC $7.6 Million Note**

The holder of the Class 2 Claim is entitled to vote.  The Class 2 Claim shall be satisfied in the following manner:

Upon receipt of the Settlement Payment (as that term is defined in the Term Sheet attached hereto at **EXHIBIT A**) and a full and final release of the T&S Litigation, IBC shall assign the IBC $7.6 Million Note to LVH Pearville, LLC.  There shall be no payment to the Class 2 Claim Holder under the Plan.

**C.**    **Class 3 –General Unsecured Claims**

The holders of Class 3 Claims are entitled to vote.  The Class 3 Claims shall be satisfied in the following matter:

Each holder of an Allowed Class 3 Claim shall be paid its pro rata share of the Class 3 Consideration ($50,000.00) on the later of: (a) ninety (90) days after the Effective Date; or (b)

15

the date such Class 3 Claim becomes an Allowed Claim.  Any default interest, late fees, legal

fees, or other contractual penalties shall be deemed waived as of the Effective Date.  Holders of

Class 3 Claims will not receive interest on the unpaid balance of their Class 3 Claims.  The Exit

Financing shall be the source of the Cash used to pay the Class 3 Claim.

**D.      Class 4 – Consolidated Van Hessen Claim**

The holder of the Class 4 Claim is entitled to vote.  The Class 4 Claim shall be satisfied

in the following manner:

  i. *Capitalization*.  On the Effective Date, the Class 4 Claim shall consolidated
     and capitalized as the Class 4 Claim Note with a principal amount of
     $3,848,125.94.

  ii. *Interest Rate*.  The Class 4 Claim Note shall bear interest at the New York
      Prime Rate plus 1.50% with a floor of 5.75% per annum.

  iii. *Term and Amortization*.  Payments of interest only shall be made in equal
       payments commencing on January 31, 2011 for a period of 12 months.
       Thereafter, the Class 4 Claim Note shall be amortized over a sixty month
       (five year) period.

  iv. *Collateral*.  The Class 4 Claim Note is not secured by any collateral in the
      Debtor or Reorganized Debtor's assets.

**E.      Class 5 - Partnership Interests**

Class 5 is impaired and is deemed to reject the Plan.  The holders of Partnership Interests in

the Debtor shall surrender their Partnership Interests.

### ARTICLE IV.

### TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.    **Administrative Claims.**

1.    **Generally.**

Subject to the bar date provisions herein, the Reorganized Debtor shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date, or (b) the date such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable.

2.    **Payment of Statutory Fees.**

Within ten (10) days of the Effective Date, the Debtor or Reorganized Debtor shall pay all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, in Cash in full.

3.    **Bar Date For Administrative Claims.**

i.    **General Provisions.**

Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Effective Date. Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other person or entity, or any of their respective property.

17

Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

### ii.      Professionals.

All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case or under any Bankruptcy Code section) shall File and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date.

### iii.      Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described in subparagraph (ii) above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to File any request for payment of such claims.   Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.

### B.      Priority Tax Claims.

To the extent such claims exist, each holder of an Allowed Priority Tax Claim shall receive one of the following two treatments, as determined by the Reorganized Debtor in its sole and absolute discretion, on account of and in full satisfaction of such Allowed Priority Tax

18

Claim: (a) Cash on the Effective Date, or on such other date on which such Priority Tax Claim becomes an Allowed Claim, in an amount equal to the amount of the Allowed Priority Tax Claim or (b) payment in sixty equal monthly payments with interest calculated in accordance with 11 U.S.C. section 511. To the extent that a holder of an Allowed Priority Tax Claim has a lien on the Debtor's Property, such lien shall be retained by the holder until the claim, including interest thereon, is paid in full. Further, to the extent that a holder of an Allowed Priority Tax Claim is entitled to post-petition interest at the statutory rate pursuant to 11 U.S.C. §§ 506 and 511, such interest shall be included in the calculation of the Allowed Priority Tax Claim.

## ARTICLE V.

## MISCELLANEOUS PROVISIONS

**A.      Request for Relief under Bankruptcy Rule 9019.**

By this Plan, the Plan Proponents are also requesting relief from the Bankruptcy Court pursuant to Bankruptcy Rule 9019 to approve certain compromises resolving the T&S Litigation and the IBC Litigation.

As more fully described in section V (E) of the Disclosure Statement, the Debtor was named as a defendant in the IBC Litigation and the T&S Litigation. Through the IBC Settlement (as memorialized in the Term Sheet at **EXHIBIT A**) and Van Hessen's purchase of the T&S Claim, the parties have essentially resolved both the IBC Litigation and the T&S Litigation. Pursuant to the terms of the IBC Settlement, IBC will cancel and otherwise discharge the IBC $7.6 Million Note and dismiss with prejudice the IBC Litigation in exchange for receiving (i) an $850,000 payment from Van Hessen; and (ii) an assignment of $2,000,000.00 of MUD-381 bonding capacity; and (iii) obtaining a full and final release for IBC in the T&S Litigation. Thereafter IBC also agrees to release any liens it has on the PAD Sites which are the subject of

19

the IBC Litigation. The IBC Settlement also provides that IBC, Van Hessen, LVH Pearville and the Debtor will enter into mutual releases in a form to be agreed upon providing a release of all claims by and between the parties and that each party shall bear its own fees and expenses including but not limited to those fees covered by the Porter & Hedges Proof of Claim. Further as part of Van Hessen's purchase of the T&S Claim, Van Hessen has taken an assignment of that claim and stepped into the position of T&S as plaintiff in the T&S Litigation. Accordingly, the Plan Proponents seek the Bankruptcy Court's approval of the Plan Proponents' resolution of the IBC Litigation and T&S Litigation and the mutual releases granted there under as described in the Term Sheet.

Pursuant to Bankruptcy Rule 9019(a), the Court has the discretionary authority to approve a compromise of a controversy. *See Continental Airlines, Inc. v. Air Lines Pilots' Ass'n Int'l (In re Continental Airlines, Inc.)*, 907 F.2d 1500, 1508 (5th Cir. 1990). In both the T&S Litigation and IBC Litigation, the Debtor was a defendant and did not assert any affirmative claims. The proposed resolution of these two lawsuits as embodied in the IBC Settlement and Van Hessen's purchase of the T&S Claim is in the best interest of the Debtor and its creditors because the Debtor will not be responsible for making the payments called for under the settlement agreements and the Debtor had no affirmative claims for relief. Moreover, resolving the lawsuits was essential to for a successful reorganization which is in the best interest of all of the Debtor's creditors. *See In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir 1994); *In re General Homes Corp.*, 181 B.R. 898,901 (Bankr. S.D. Tex. 1995).

**B.    Executory Contracts.**

The Reorganized Debtor by the Confirmation Order will assume the Executory Contracts as scheduled on **EXHIBIT B**. Unless expressly listed on **EXHIBIT B** as an Executory Contract

being assumed by the Reorganized Debtor, all other Executory Contracts are deemed rejected by the Reorganized Debtor.   Except as otherwise agreed to by the parties to the applicable Executory Contract, the Reorganized Debtor shall cure any and all undisputed defaults under any Executory Contract assumed by the Reorganized Debtor pursuant to the Plan in accordance with section 365(d) of the Bankruptcy Code except that any payment due from the Reorganized Debtor to cure said undisputed default shall be paid on the earlier of March 31, 2011 or the MUD-381 Tranche One Reimbursement Payment Date or as otherwise may be agreed to by the parties.

All disputed defaults that are required to be cured shall be cured either within thirty (30) days of entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as otherwise may be agreed to by the parties.   However, in no case shall a payment pursuant to a disputed default be paid before the earlier of March 31, 2011 or the MUD-381 Tranche One Reimbursement Payment Date.

### ARTICLE VI.

### ACCEPTANCE OR REJECTION OF THE PLAN

A.   **Voting Classes.**

Each holder of a Claim in Classes 1, 2, 3, and 4 shall be entitled to vote to accept or reject the Plan. Each holder of a Partnership Interest in Class 5 shall be deemed to have rejected the Plan.

B.   **Voting Rights of Holders of Disputed Claims and Disputed Interests.**

Pursuant to Bankruptcy Rule 3018(a), a Claim or Partnership Interest that is Disallowed or which is disputed or objected to will not be counted for purposes of voting on the Plan to the extent it is disputed, unless the Court enters an order temporarily allowing the Claim or

21

Partnership Interest for voting purposes under Bankruptcy Rule 3018(a). Such disallowance for voting purposes is without prejudice to the claimant's or interest holder's right to seek to have its Claim or Partnership Interest, as the case may be, allowed for purposes of distribution under the Plan.

### C.    Acceptance by Impaired Classes.

An impaired class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Claims actually voting in such class have voted to accept the Plan, and (b) more than one-half in number of the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of such Claims actually voting in such class have voted to accept the Plan.

### D.    Nonconsensual Confirmation.

In the event that any Class of Claims fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor requests that the Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

### ARTICLE VII.

### MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Notice of Occurrence of Effective Date

The "Effective Date" of this Plan shall be the date of the Confirmation Order. The Reorganized Debtor shall File with the Court a notice of the occurrence of the Effective Date within five Business Days of the occurrence of the Effective Date.

Notwithstanding any other provision of this Plan, the Effective Date shall not occur until

22

the following conditions have been either satisfied or waived by the Debtor or the Reorganized
Debtor (or will be satisfied or waived contemporaneously with the occurrence of the Effective
Date): (1) the Exit Financing contemplated by the Plan which is due to have been paid on the
Effective Date shall have been funded to the Debtor; and (2) the IBC Settlement obligations have
been fulfilled.

From and after the Effective Date, any Person who desires notice of any pleading or
document filed in the Reorganization Case, or of any hearing in the Court, or of any matter as to
which the Bankruptcy Code requires notice to be provided, shall file a request for post-
confirmation notice and shall serve the request on counsel for the Debtor; provided however, the
United States Trustee shall be deemed to have requested post-confirmation notice.

### B.    Vesting of Assets and Operations of Property.

All property of the estate and the Property shall be transferred to the Reorganized Debtor
on the Effective Date. On the Effective Date, pursuant to the Plan and the Confirmation Order,
any receiver, custodian or similar person or entity appointed prior to the Effective Date for the
Debtor or any of its property shall be terminated and discharged from its responsibilities and
duties and all property, including Cash, of the Debtor held by such receiver, custodian or similar
person or entity shall be immediately turned over to the Reorganized Debtor, without setoff or
offset.

### C.    Means to Implement the Plan.

The Reorganized Debtor shall make all distributions required under the Plan.

### D.    Means for Funding the Plan.

The Reorganized Debtor shall make all distributions required under the Plan out of the
Exit Financing.

23

E.      **Objections to Claims/Administrative Claims/Interests.**

1.      **Objections to Claims or Interests; Prosecution of Disputed Claims or Disputed Interests.**

LVH Pearville as a joint-proponent of the Plan, or the Reorganized Debtor shall have the exclusive right to object to the allowance, amount or classification of Claims or Interests asserted in the Reorganization Case, and such objections may be litigated to Final Order by LVH Pearville acting on behalf of the Reorganized Debtor. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims or Interests shall be filed no later than ninety days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court. Such extensions may be obtained by LVH Pearville upon ex parte motion.

2.      **Estimation of Disputed Claims.**

The Debtor, and after the Effective Date, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate for all purposes, including distribution under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

3.      **No Distribution on Account of Disputed Claims.**

No Distribution shall be made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim or Interest until the entire Claim or Interest becomes an Allowed Claim or an Allowed Interest. The Reorganized Debtor shall set aside or reserve a

24

portion of the consideration payable to the holders of Allowed Claims and Allowed Interests in a particular Class to be held in the Disputed Claims or Disputed Interests reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims or Disputed Interests in such Class the full distributions they may be entitled to if their respective Claims or Interests were allowed in full.

### F.  Disputed Claims.

Pending resolution of a Disputed Claim, all Cash to be distributed to the holder of the Disputed Claim shall be placed in a segregated bank account at a federally insured financial institution and maintained by Reorganized Debtor until distribution to the holder of such Claim under the Plan. Distribution shall be made only from the Disputed Claims reserve and only at such time as a particular Claim is determined to be an Allowed Claim. The holder of a Disputed Claim that is ultimately allowed shall have no recourse against the Reorganized Debtor or its property for the payment of its Allowed Claim. No interest shall accrue or will be paid with respect to any Disputed Claim for the period from the Effective Date to the date a distribution, if any, is made with respect to said Disputed Claim upon becoming an Allowed Claim. To the extent that a Disputed Claim ultimately is disallowed or allowed in an amount less than the amount of the reserves for such Disputed Claim, any resulting surplus in the reserve shall be transferred from the reserve to the Reorganized Debtor.

### G.  Effect of Confirmation.

Upon the happening of the Effective Date, the effect of Confirmation shall be set forth in 11 U.S.C. § 1141.

### H.  Retention of Jurisdiction.

After Confirmation of the Plan and occurrence of the Effective Date, in addition to

25

jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

1.      To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

2.      To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

3.      To determine the extent, validity, and priority of any lien asserted against property of the Reorganized Debtor or property of the Estate except as to liens asserted against the Property which have been assumed or discharged pursuant to this Plan;

4.      To construe and to take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, and the Confirmation Order and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Reorganization Case on or before the Effective Date with respect to any person or entity;

5.      To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

6.      To determine any other request for payment of administrative expenses;

26

Case 10-34074   Document 114   Filed in TXSB on 12/10/10   Page 45 of 61

7.      To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan and the Confirmation Order;

8.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases Filed before the Effective Date and the allowance of any claims resulting therefrom;

9.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the Reorganization Case whether before, on, or after the Effective Date;

10.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

11.     To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

12.     Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan and the Confirmation Order or the execution or implementation by any person or entity;

13.     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

14.     To enter a final decree closing the Reorganization Case; and

15.     To issue such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy

27

law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules.

**I.      Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such entity.

**J.      Amendment, Modification, and Severability.**

1.      This Plan may be amended or modified before the Effective Date by the Debtor to the extent provided by section 1127 of the Bankruptcy Code.

2.      The Debtor reserves the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan, as it is currently drafted, is not confirmable pursuant to section 1129 of the Bankruptcy Code to the extent such a modification or amendment is permissible under section 1127 of the Bankruptcy Code without the need to resolicit consents, and the Debtor reserves the right to sever any provisions that the Bankruptcy Court finds objectionable.

**K.      Delivery of Distributions and Deliverable or Unclaimed Distributions.**

**1.      Delivery of Distributions in General.**

Except as provided below for holders of undeliverable distributions, distribution to holders of Allowed Claims shall be distributed by mail as follows:

a.      At the addresses set forth on the respective proofs of claims of such holders; or

b.      At the addresses set forth in any written notices of address, changes

28

delivered to the Reorganized Debtor after the date of any related proof of claim; or

      c.     At the address reflected on the Schedules if no proof of claim or proof of interest is Filed and the Reorganized Debtor has not received a written notice of change of address.

### 2.     Undeliverable Distributions.

In the event any payment to a holder of a Claim under the Plan remains unclaimed for a period of six (6) months after such distribution has been made (or after such delivery has been attempted), such Unclaimed Distribution and all future distributions to be made to such holders shall be deemed forfeited by such holder and any such distributions retained by the Reorganized Debtor.  No provision contained in this Section or elsewhere in the Plan shall be interpreted to require the Reorganized Debtor to attempt to locate any such Person.

      a.     **Fractional Cents.**  Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .5).

      b.     **No Cash Payments of $5.00 or Less on Account of Allowed Claims.**  If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than Five Dollars ($5.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, no such payment will be made and the Reorganized Debtor shall retain such funds for its own purposes.

      L.     **Claims Against Others.**

Although some insiders received distributions within the applicable avoidance period, the Debtor will not pursue these actions since creditors are being paid in full under the Plan.

29

The Debtor has not conducted a complete analysis of other avoidance claims arising under the Bankruptcy Code. The Debtor does not believe that it will pursue any Avoidance Actions.

### M.    Retention of Claims and Causes of Action.

Except to the extent any rights, Causes of Action, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Reorganization Case: (i) any and all Retained Causes of Action accruing to the Debtor or the Estate shall remain assets of and vest in the Reorganized Debtor, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Retained Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Court, and (ii) neither the Debtor, the Estate, nor the Reorganized Debtor waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Retained Causes of Action that constitute property of the Debtor or the Estate: (a) whether or not such Retained Causes of Action have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not any such Retained Causes of Action are currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to any such Retained Causes of Action Filed a proof of Claim or Partnership Interest in the Reorganization Case, Filed a notice of appearance or any other pleading or notice in the Reorganization Case, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose,

30

describe, identify, analyze or refer to any Retained Causes of Action, or potential Retained Causes of Action, in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's or the Reorganized Debtor's right to commence, prosecute, defend against, settle, recover on account of, and realize upon any Retained Causes of Action that the Debtor or its Estate have or may have as of the Effective Date.

The Debtor expressly reserves all Retained Causes of Action for later adjudication by the Reorganized Debtor, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Retained Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Reorganized Debtor expressly reserves the right to pursue or adopt Retained Causes of Action that are alleged in any lawsuits in which the Debtor is a defendant or an interested party, against any Person or Governmental Entity, including the plaintiffs or co-defendants in such lawsuits.

Any Person or Governmental Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtor, or who has received money or property from the Debtor, or who has transacted business with the Debtor, or who has leased equipment or property from or to the Debtor should assume that such obligation, receipt, transfer or transaction may be reviewed by the Debtor or the Reorganized Debtor subsequent to the Effective Date and maybe the subject of an action after the Effective Date, whether or not: (a) such Person or Governmental Unit has Filed a proof of Claim or Interest against the Debtor in the Reorganization Case; (b) such

31

Person's or Governmental Unit's proof of Claim or Interest has been objected to by the Debtor; (c) such Person's or Governmental Unit's Claim or Interest was included in the Debtor's Schedules; or (d) such Person's or Governmental Unit's scheduled Claim or Interest has been objected to by the Debtor or has been identified by the Debtor as contingent, unliquidated or disputed.

### N.    No Waiver of Claims.

Neither the failure to list a Claim in the Schedules filed by the Debtor, the failure of the Debtor or any other Person to object to any Claim for purposes of voting, the failure of the Debtor or any other Person to object to a Claim, Partnership Interest or Administrative Claim before Confirmation or the Effective Date, the failure of any Person to assert a Claim or Cause of Action before Confirmation or the Effective Date, the absence of a proof of Claim or Partnership Interest having been filed with respect to a Claim or Partnership Interest, nor any action or inaction of the Debtor or any other Person with respect to a Claim, Partnership Interest, or Administrative Claim, other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Debtor or the Reorganized Debtor before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim, Partnership Interest or Administrative Claim, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Claim or Cause of Action against the holder of any such Claim.

### O.    Notices Under the Plan.

Notices, requests, or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the

Debtor, addressed to:

> Spencer Crain Cubbage Healy & McNamara, pllc
> Thomas H. Grace
> 1330 Post Oak Blvd., Suite 1600
> Houston, TX  77056

### P.    Withholding Taxes/Setoffs.

The Reorganized Debtor shall be entitled to deduct any Federal or State withholding taxes from any payments with respect to Allowed Claims for wages of any kind.   The Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim, and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtor or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim the Debtor may have against such holder.

### Q.    Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays arising before the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, or such later date as provided under applicable law.

### R.    Exemption from Certain Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer (including the filing and/or recording of any and all documents, liens, security interests or other documents in connection with or related to secured claims or the assumption or modification thereof pursuant to this Plan) or of cancellation and/or releases of any liens or security interests will not be subject to any

33

stamp tax or similar tax to the fullest extent authorized by section 1146(a) of the Bankruptcy Code, or otherwise.

        **S.**     **Governing Law.**

     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of **the State of Texas** (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

34

Dated: December 10, 2010

Pearville, L.P., a Texas Limited Partnership

By:  JEFCO Development Corporation, a Texas
Corporation, General Partner

By:  _____
      James E. Fisher, Jr.
      President, JEFCO Development Corporation


LVH Pearville LLC, a Texas Limited Liability Company
(to be formed)

By:  LVH Pearville LLC

By:  _____
      Reuven M. Bisk
      Proposed Manager, LVH Pearville LLC

35